THOMAS H. DRIVER, SR. ET AL. *v.*
PARKE-DAVIS & CO. ET AL.

[No. 297, September Term, 1975.]

*Decided December 4, 1975.*

The cause was argued before ORTH, C. J., and DAVIDSON and LOWE, JJ.

*John T. Enoch,* with whom were *Goodman, Meagher & Enoch* on the brief, for appellants.

*Donald L. DeVries, Jr.,* with whom were *John H. Mudd, Charles E. Iliff, Jr.,* and *Semmes, Bowen & Semmes* on the brief, for appellee Parke-Davis & Company. *E. Dale Adkins, III,* with whom were *John F. King* and *Anderson, Coe & King* on the brief, for other appellees.

LOWE, J., delivered the opinion of the Court.

As unrelenting as Juno's hate, Md. Rule 530 once again brings about an "inexorable dismissal" where "no proceedings of record have been taken within a period of eighteen months. . . ."

On December 10, 1969, appellants sued in the Circuit Court for Harford County, for the wrongful death of Mary Driver which, according to appellants, was caused by a prescription of an antibiotic drug known as Chloromycetin.

In answer to demurrer timely filed and granted, an amended declaration was filed July 24, 1970. Appellees put the case at issue by pleas on August 7 and 14, 1970. The docket reflects substantial activity until after October 20, 1972, upon which date an entry indicates the filing of an unanswered supplemental interrogatory by appellee Parke-Davis & Co.

Nearly two years elapsed before the next entry on October 15, 1974 indicating that notice was sent of contemplated dismissal pursuant to Md. Rule 530. That rule prescribes that a pending action in which proceedings of record have not taken place within an eighteen month period shall be dismissed, unless for good cause shown, the court suspends the operation of the rule.[1]

---

1. Although Md. Rule 530 has been changed, effective July 1st, 1975, the language of the Rule under which the dismissal occurred in this case is as follows:

"Rule 530. Dismissal for Lack of Prosecution.

    a. *Dismissal of Action Pending Eighteen Months Without Proceedings.*

Except as provided in subsection (e) of this Rule any pending action in which no proceedings of record have been taken within a period of eighteen months shall be subject to dismissal for lack of prosecution under the provisions of this Rule. Proceedings under this Rule, under Rule 124 (Appearance) or under Rule 125 (Attorney — Striking Appearance) are not proceedings of record for purposes of this Rule.

    b. *Notification of Contemplated Dismissal.*

In all such actions the clerk shall notify counsel of record that an order of dismissal for lack of prosecution will be entered after the expiration of thirty (30) days unless prior to the expiration thereof a motion is filed under section c of this Rule. In the event counsel has died or his appearance has been stricken pursuant to Rule 125 (Attorney — Striking Appearance), and the party represented is not represented by another attorney of record, the clerk shall send the notification required by this section to such party at the address shown on the pleadings. The notification shall be served in the manner provided by Rule 306 (Service of Pleadings and Other Papers).

    c. *Motion for Suspension of Dismissal Rule.*

On motion filed at any time prior to thirty days after service of such notice, computed according to section c 3 of Rule 306 (Presumptions in Case of Service by Mail), the court for good cause shown may suspend the operation of this Rule. The order of

Pursuant to a motion filed by appellants on October 25, 1974, Judge Albert Close signed an ex parte order suspending the operation of Md. Rule 530, as provided by subsection c, on October 29, 1974. Without knowledge of this ex parte order signed four days after the motion, appellee Parke-Davis & Co. filed its timely answer to the motion on October 31, 1974. Appellee doctors filed their answer on November 12, 1974.

On or about November 16, 1974 notice was sent that a trial date for April 2, 1975 had been assigned. Upon receipt of this notice, appellee Parke-Davis & Co., still unaware of the ex parte order, requested a hearing on the motion to suspend the rule which it had answered.

A full hearing was held on February 11, 1975 before Judge Edward Higinbothom, which resulted in an order subsequently filed rescinding Judge Close's ex parte suspension of Rule 530. Appellants then moved for reconsideration by Judge Higinbothom under Md. Rule 625. Additional grounds were added to their original petition under Md. Rule 530 c. The court consented to the

---

suspension shall prescribe the duration and any other terms of the suspension.

d. *Entry of Dismissal and Assessment of Costs.*

Thirty days after service of such notice, computed according to section c 3 of Rule 306 (Presumptions in Case of Service by Mail), the clerk shall enter on the docket "Dismissed for want of prosecution without prejudice," unless prior to that time a motion shall have been filed under section c of this Rule, or unless the court shall previously have suspended the operation of this Rule. The clerk shall thereafter assess costs against the plaintiff.

e. *Exceptions.*

This Rule shall not apply to actions involving the military docket, continuing trusts, guardianships, estates of incompetents, or issues from an Orphans' Court. An action for divorce *a mensa et thoro* shall be subject to dismissal under this Rule only if no proceedings have been taken within a period of two and one-half years.

f. *Powers of Trial Courts.*

Courts may by rule or order provide for a period longer than, but not less than, eighteen months in all actions or in certain classes of actions other than those actions provided for in section e of this Rule."

reconsideration, considered the additional grounds sug-
gested by appellants, and reaffirmed its former decision
by memorandum opinion and order rescinding the sus-
pension of dismissal, dismissing the case under the Rule,
and assessing costs to appellants.

The three issues raised below and answered adversely to
appellants are brought to us on appeal. Essentially
appellants contend that:

1. Md. Rule 1211, as supplemented by an order of
   the Circuit Court for Harford County dated
   January 2, 1970, requires the Clerk of the Court
   of Harford County, acting as assignment clerk, to
   notify all parties of a trial date within two weeks
   after the case becomes at issue. Since this was
   admittedly not done in the instant case,
   appellants argue that they are relieved from the
   onus of dismissal under Rule 530;
2. Because Judge Close suspended the Rule's
   operation by ex parte order, another judge of the
   same court cannot reconsider or reverse his
   action;
3. Because it has been the practice of the Third
   Judicial Circuit to waive the operation of Rule
   530 upon request, the court abused its discretion
   by denying that relief.

### Md. Rule 1211, as Supplemented

Md. Rule 1211 lays the supervisory responsibility for trial
assignments upon the County Administrative Judge, ". . . to
the end that maximum use of available judicial manpower is
obtained, and pending actions brought to trial and disposed
of as expeditiously as feasible." The Rule then provides that
he will institute procedures designed among other purposes,
to

" . . . Establish trial and motion calendars and other
appropriate systems under which actions ready for
trial will be assigned for trial and tried, after

proper notice to parties, without the necessity of a request for assignment from any party."

A Committee note under the rule recognizes "that it may be inexpedient to require a uniform assignment procedure in all jurisdictions"; however, it then suggests a desirable procedure "which may be adopted in whole or in part. . . ." Apparently by Order No. 69, the Administrative Judge of the Circuit Court for Harford County promulgated a procedure patterned after the committee's recommendations, to take effect on the second Monday of January, 1970. It provides that when a law case is at issue ". . . it shall automatically have a tentative trial date, six months from the date of issue." In addition to maintaining a trial calendar showing details of all cases at issue, the assignment clerk was required to notify all counsel in writing of the tentative trial date within two weeks after the case is at issue and again by written notice when the trial date is firm.

Appellants admit that the case was "at issue" after appellees filed their general issue pleas in August of 1970 and contend that they were entitled to, but did not receive from the assignment clerk, either a trial date or notice thereof, "without the necessity of a request for assignment from any party." By analogizing the mandatory reissuance of a summons returned non-est pursuant to Md. Rule 1211, appellants cite *Piersma v. Seitz*, 10 Md. App. 439, to support their premise that the implementation of Order No. 69 pursuant to Md. Rule 1211 placed the mandatory duty of trial assignment and notice upon the assignment clerk. They argue that the imposition of those duties upon the clerk relieves counsel and parties plaintiff from prosecuting their cases under Md. Rule 530, which provides for dismissal upon lack of prosecution.

"One plain purpose of the Rule [1211] and Administrative Order [No. 69] was to assure that . . . Counsel need have no concern about jeopardizing his client's case by failing to request a trial assignment."

In short, they contend inferentially, if not overtly, that the combined impact of Rule 1211 and Order No. 69 not only augments the underlying purpose of Rule 530, *i.e.*, to "focus on the dead case, the case left unprosecuted for years at a time, . . ." *Mut. Benefit Soc'y v. Haywood,* 257 Md. 538, 539, but negates or in effect repeals it.

Judge Higinbothom ruled that Order No. 69, dated January 2, 1970, is not applicable to cases filed before its effective date. Hence it should not apply to this case filed in December of 1969. Furthermore, he said,

> "The Rules do not make the operation of Rule 530 contingent upon receipt of a trial date."

We agree with the trial court. If the Court of Appeals intended to repeal or negate the self-executing effect of Md. Rule 530 by its enactment of Md. Rule 1211, it would have so stated.

In *Cooney v. Bd. of Co. Comm'rs,* 21 Md. App. 57, 59, Judge Thompson quoted the Court of Appeals' holding in *Stanford v. District Title Insur.,* 260 Md. 550, 554, that Md. Rule 530 was

> " ' . . . self-executing, in the sense that it is actuated by inaction of the parties and the passage of time.' "

The *Stanford* Court had made it abundantly clear that

> " . . . nothing except the presence of proceedings of record will toll the operation of Rule 530; . . . ." *Id.* at 555.

Even if we assume that the assignment clerk was responsible for setting a trial date and sending notification thereof under Order No. 69 in this case, and failed to do so, we interpret *Stanford* as saying that the plaintiff is not relieved of prosecuting his case and providing proof of proceedings therein on the record. If the clerk has failed in his responsibility (and we do not so decide) under one Rule, that does not relieve appellants from their responsibility under another.

### Horizontal Appeal

Appellants contend that, because Judge Close had signed an ex parte order suspending operation of Md. Rule 530, it was beyond Judge Higinbothom's authority to reverse the discretionary decision of Judge Close. In his first memorandum opinion, Judge Higinbothom pointed out that the ex parte order was signed by Judge Close well before the fifteen days for an answer to be filed had elapsed. He noted further that timely answers were filed and that appellees were entitled to a hearing under Md. Rule 1210 c.

Appellants rely heavily on the decision of the United States Court of Appeals for the Second Circuit in *In re Hines*, 88 F. 2d 423. They quote this 1937 case as stating:

" . . . [i]t is well established that a judge may not overrule the decision of another judge of coordinate jurisdiction made in the same case." [2]

Appellees point out to us, however, that *Hines* was expressly founded upon the Second Circuit case of *Commercial Union of America v. Anglo-South American Bank,* 10 F. 2d 937 which was overruled in *Dictograph Products Co. v. Sonotone Corporation,* 230 F. 2d 131, *cert. dismissed* 352 U. S. 883. In a long discussion of the question the *Dictograph* court viewed the question as

" . . . in substance the same as that which arises

---

**2.** We note in passing that appellants "analogous situations" are of no help to us. They contend that:

"In analogous situations, the Maryland Court of Appeals has said that a judgment or decree rendered by a court of competent jurisdiction and not void on its face may be modified, annulled, vacated, or set aside only by the court which rendered it or by a court exercising appellate jurisdiction, and not by any other court, especially not a court of equal or concurrent jurisdiction. *Messall v. Merlands Club, Inc.,* 244 Md. 18, 222 A. 2d 627 (1966) certiorari denied, 386 U. S. 1009; *Loft Inc. v. Buckler,* 148 Md. 647. 129 A. 914 (1925)."

These cases are totally inapposite as are the cases cited in them. Each deals with questions of res judicata or the principle that where a subject of controversy is in possession of a court of competent jurisdiction, its action should not be interfered with by a court of concurrent jurisdiction. See *Withers v. Denmead,* 22 Md. 135.

> when an appellate court upon a second appeal is faced with an earlier decision of its own, especially if the earlier decision happens to be that of a different panel of judges. The second panel has unquestioned power — 'jurisdiction' — to deviate from the first, but as a matter of practice it rarely does so. . . .
>
> So far therefore as our original opinion must be read as meaning that the question is not one of discretion, and that on no occasion may the second judge reconsider a ruling of the first judge, we now overrule it. . . ." Id. at 135-136.

Thus " . . . happily, the Second Circuit has repudiated its older doctrine and now subscribes to the general doctrine." 1B Moore's Federal Practice Sec. 0.404 [4].

Our own Court " . . . has never . . . doubted that a judge presiding at a trial, unless specifically precluded, is free at any time during the trial to reconsider any prior ruling in the case, whether made by him or by another judge." *Layman v. State*, 14 Md. App. 215, 230. In *Layman* we recalled that in *Walker v. State*, 12 Md. App. 684, 689, we had held that:

> "While we agree that a trial judge may accept the pre-trial finding as *res judicata* and is under no obligation to readjudicate a settled question, we do not agree that he need feel bound by a pre-trial ruling with which he is in strong disagreement."

And in *State v. Coffield*, 17 Md. App. 305, 314, we observed that it was error for one trial judge to feel bound by another trial judge's opinion, relying on our own authority in *Walker* and *Layman*.

The Court of Appeals' authority for this principle is of less recent vintage. In 1858 a slave was convicted of larceny and ordered "to be sold as a slave for life . . . to some person who should convey him beyond the limits of this State. . . ." He was evaluated by Judge Albert Constable whose order required that any excess paid over the valuation was to go to

the Commissioners of Harford County and any deficiency of the selling price below the valuation was to be paid to the owner by the Commissioners. Subsequently, Judge Constable's successor, Judge Price, reevaluated the slave at a lesser amount. Upon appeal the precise question, also having come from the Circuit Court for Harford County, went to the Court of Appeals. In *Robinson, et al. v. Commissioners of Harford County*, 12 Md. 132, 141-142, the Court said:

> "The appellants deny that Judge Constable had any authority to revise or reconsider the valuation, or to pass any order for such a purpose, on the 2nd of December 1853; and they say, admitting *he* then had the authority, still no successor of his, as judge, could in any manner change or modify the first valuation. But we cannot yield our assent to this view of the subject. On the contrary, we think Judge Price could exercise the same authority over the case which would have been possessed by his predecessor, if he had been living, and still in office."

The authority of a judge to reverse the decision here at issue of a fellow judge of the same court is clear. When that authority is exercised, the question becomes whether to do so was a proper exercise of discretion. *Castner v. First Nat'l Bk. of Anchorage*, 278 F. 2d 376. Here Judge Higinbothom explained his exercise of discretion in that the ex parte order had been signed too precipitously, denying appellees the right to answer (which they did in timely fashion) and the right to be heard. To avoid conflict with his fellow judge, Judge Higinbothom explained:

> "Judge Close was advised in detail of this Court's action and raised no objection thereto."

We hold that Judge Higinbothom did not abuse his discretion. Indeed, had his discretion not been so exercised, a review of the discretion exercised on the original ex parte order to suspend, without allowing time to appellees to

answer or be heard, would have caused us more concern than does its recision.

## Abuse of Discretion

Because appellants produced court clerks who could remember no case which was dismissed under similar circumstances pursuant to Md. Rule 530, they contend that Judge Higinbothom abused his discretion. We do not agree. In *Stanford v. District Title Insur.*, 260 Md. at 555 Judge Digges said:

> "The decision to permit the redemption of a cause lost through delay involves subtle judgment, requiring the trial judge to balance the individual litigant's right to ultimately have his day in court against the public's paramount interest in insuring that all citizens can obtain a prompt resolution of conflicts while they still remain current. The primary focus of his inquiry should be on diligence and whether there has been a sufficient amount of it during an eighteen month period of inaction for the court to affirmatively conclude that the case should not be automatically dismissed. That decision, whatever it may be, rests in the sound discretion of the trial judge and we will only invade his province on appeal in extreme cases of clear abuse. *Tydon v. Spong, supra* [237 Md. 107] at 110.
>
> ... We answer first that nothing except the presence of proceedings of record will toll the operation of Rule 530; otherwise, its effect of speeding up litigation would be lost on happenstances that rarely interfere in other areas of human affairs. We answer secondly that even with these excuses, which are appealing on their face, the trial judge was fully justified in determining there was no evidence of diligence or of any valid reason for the delay in this case."

Here too appellants note appealingly that through correspondence with their adversaries, they had acquiesced

in every alternative trial date advanced by appellees. The short answer to that is found in *Cooney,* 21 Md. App. at 59 where:

> "To halt the inexorable dismissal of his complaint, appellant interposes a copy of a letter which he contends was sent ... thirteen months after the case was at issue, to the Clerk of the Court requesting that the cause be set for hearing.
>
> The opinion of the lower court explicates that this letter did not constitute good cause, which subsection c requires to sustain a suspension of this self-executing rule of dismissal:
>
>> ' ... It is the responsibility of the party or parties, as the case may be, to have the matter set for a hearing when so desired. No such effort was received by the Court and consequently the matter has laid dormant for the eighteen months prescribed under Rule 530.' "

Such efforts must be manifested by proceedings of *record* to toll the operation of the rule. *Stanford, supra,* 260 Md. at 555. The period of dormancy upon which the trial judge is required to focus to determine whether there has been diligence in an amount sufficient to redeem for good cause a suit lost through delay, Md. Rule 530 c, *Cooney v. Bd. of Co. Comm'rs,* 21 Md. App. at 60, lasted in this case for two years before dismissal was indicated (which was also five years after suit was filed and seven years after the death sued upon had occurred). We find no clear abuse of the trial judge's discretion in failing to suspend the Rule's operation. *Stanford v. District Title Insur.,* 260 Md. at 555.

*Judgment affirmed.*
*Costs to be paid by appellants.*