DANIEL J. PLACIDO ET AL. *v.* CITIZENS BANK AND TRUST COMPANY OF MARYLAND ET AL.

[No. 128, September Term, 1977.]

*Decided November 10, 1977.*

34

The cause was argued before Menchine, Mason and Liss, JJ.

*Jack H. Olender* and *Sherman L. Cohn*, with whom were *Josiah Lyman* and *Joseph Lyman* on the brief for appellants Placido, Laz and Bednarik. *Donald Joseph Sheehy* for appellant Edmond R. Leach, II.

*Ronald A. Baradel*, with whom were *Hartman & Crain* on the brief, for appellees.

Menchine, J., delivered the opinion of the Court.

Two general and six limited partners in Suitland Medical Arts Building, a Limited Partnership (Suitland), doubtless

envisioned their proposed edifice as a joy in their youth and a support in old age. Unhappily, its completion brought only the "comfort of the miserable to have partners in their woes." [1]

Suitland in 1971 contracted for the construction of a building, the construction financing of which was to be supplied by Citizens Bank and Trust Company of Maryland (Citizens) in the maximum sum of $1,125,000.00. Upon completion of the building permanent financing was to be supplied by Monumental Life Insurance Company (Monumental) but with a contingency, the non-occurrence of which would lessen the amount of its total obligation. Construction financing by Citizens required it to advance $1,125,000.00 without limitation. On the other hand, Monumental's commitment for permanent financing in that amount was conditioned upon proof of certain leasing contingencies. Monumental's absolute obligation for permanent financing, in the absence of fulfilled contingencies, was limited to the sum of $956,000.00.

This circumstance created a condition whereby Citizens might be required to advance $169,000.00 more than the permanent financing by Monumental would return to it upon completion of the building. Otherwise stated, Citizens undertook a risk that it may become a creditor secondary to Monumental to the extent of $169,000.00 if the leasing contingencies could not be met.

For protection of its potentially greater obligation, Citizens demanded and received as additional security a demand note for $169,000.00 executed in behalf of the partnership, and endorsed by the general and limited partners as individuals. Such a note was made and endorsed on November 11, 1971.

At the time of its execution and endorsement all parties knew that it was not certain whether full use of Citizens obligated sum would be required or whether, upon completion of the building, the contingencies upon which full permanent financing by Monumental depended would have

---

1. Cervantes, Don Quixote pt. I bk. III ch. 10.

been met. In due course, however, it became clear that: (a) the leasing contingencies would not be met; (b) Monumental's permanent financing would be limited to $956,000.00; and (c) Citizens would be required to advance the $169,000.00 to complete the building.

Thus it was that on March 27, 1973, John B. Stauch and Ronald B. Sellers, the two general partners, were called to the bank. After being apprised that Citizens was required to advance $169,000.00 for Suitland's account, the face of the note was altered by striking out the date November 11, 1971 and inserting the date March 27, 1973 thereon. Stauch and Sellers placed their signatures at the top of the note near the changed date.

There was evidence showing that none of the appellants who had placed their endorsements on the reverse side of the note on November 11, 1971, were aware of and none consented to or ratified the alteration of the date of that note.

On January 21, 1974, Citizens filed suit against the general and limited partners in the Circuit Court for Prince George's County. The declaration alleged that appellants had "on or about March 27, 1973 . . . promised to pay the sum of . . . $169,000.00." In due course judgment in favor of Citizens against all eight partners, both general and limited, were entered. Four limited partners, namely, Daniel J. Placido, Edmond R. Leach, John S. Bednarik and Andre Laz, have appealed from the judgment entered against them. They have appealed as well from judgment entered against them in favor of John E. Stauch, one of the general partners under count I of Stauch's cross-claim for contribution.

The manner in which the judgments appealed from were entered against the appellants was quite unusual, *i.e.*, by the grant of summary judgment after the plaintiff (Citizens) had offered testimony in seven days of trial and before any evidence had been presented by or on behalf of the defendants-appellants. Appellants contend that the grant of summary judgment under such circumstances was erroneous both procedurally and substantively and should

be reversed, with the case remanded for a new trial wherein the appellants would be accorded the right to offer evidence.

The unusual posture of the case as it reaches this Court compels an extensive recitation of the circumstances preceding the grant of summary judgment.

Citizens filed a motion for summary judgment supported by affidavit along with its declaration. The appellants filed amended affidavits which opposed the granting of the motion.

The facts recited in the amended affidavit of the appellant Placido were as follows:

> "My name is Daniel J. Placido and I am competent to testify in the matters stated herein. I am a defendant in this action. I am a limited partner in the Suitland Medical Arts Building Associates, a Maryland limited partnership. Based on my personal knowledge and information I did not know that the note upon which plaintiff's action is based was altered from a date of November 11, 1971 to March 27, 1973. I did not give my consent to such alteration by the plaintiff, Citizens Bank and Trust Company of Maryland, or by John E. Stauch or Ronald B. Sellers, general partners of the limited partnership.

> "I further state that this alteration of the promissory note from a date of November 11, 1971 to March 27, 1973, was not only totally unknown to me, but that I never acquiesced in this alteration nor did I ever at any time by any act or deed, ratify the action of the Bank, Stauch or Sellers in altering the note.

> "I further state that based on my personal knowledge and information no money or other consideration was advanced by the plaintiff after November 11, 1971 and prior to the alteration of said date to March 27, 1973; that between November 11, 1971 and March 27, 1973 I made

substantial contributions in money to the Suitland Medical Arts Building Associates and that there had been material changes in the financial condition of the limited partnership during this period of more than sixteen months. Further, on March 27, 1973 I would not have signed as an endorser of the note upon which the plaintiff sues and would not have agreed to the advancement of any money to the partnership for which I would be personally liable."

The facts recited in the amended affidavit of the appellant Bednarik were identical with the above. The amended affidavits of the appellants Laz and Leach, although in slightly different form, were substantially the same as the above and presented no other suggested factual dispute.

On this state of the record Citizens' motion for summary judgment came to hearing before Judge William B. Bowie. In the course of a written opinion dealing, *inter alia*, with the issue of summary judgment, Judge Bowie denied the same, saying in pertinent part:

"As to the Motion for Summary Judgment itself, defendant guarantors [endorsers] maintain that the change of date on the face of the instrument constitutes a material alteration. The original note was dated November 11, 1971, and was endorsed by the several defendants. The conflict arises over determining who, among all the endorsers, consented to the imposition of the new date of March 27, 1973. Defendants refer the Court to 4 Am Jur 2d, *Alteration of Instruments*, Section 40, where it is stated:

'As a general rule of law . . . a change in the date of an instrument of which a date is a necessary or usual part, made after its execution and delivery, whether from an earlier to a later date or vice versa, is a material alteration . . . . The date is

material, because the time of payment and the bar of the statute of limitations depend thereon.'

Furthermore, it is stated in Article 95B, Section 3-407 of the Annotated Code of Maryland, Comment 1, that '. . . any change in the contract of a party, however slight, is a material alteration . . . .' In *Mason v. Henderson,* 14 Md. App. 370, the Court states: 'Any alteration is material which changes the contract of any party thereto in any respect, including such change in writing as signed, by adding to it or by removing any part of it . . . .' In our matter, the change in date extends the obligation of the endorsers for an additional 16 months and we are unable to presume, with nothing further, that they still intended to borrow the money after such a substantial lapse of time. By changing this date, the effect is to change the date of issue, presumed or otherwise, and seems to constitute a material alteration. The simple problem left is to determine whether the endorsers under the original note consented to that change. Otherwise, plaintiff can only sue on the note 'in its original tenor', Article 95B, Section 3-407(2)(b). The plaintiff has chosen to sue on the note with the later date. The alteration appears on the face of the instrument but the consent of the endorsers other than defendants Sellers and Stauch, do not so appear. This gives rise to a genuine dispute as to a material fact as to whether there was proper consent on behalf of the remaining endorsers and therefor summary judgment should be denied."

It was in this setting that the case came to trial before Judge James H. Taylor. At the conclusion of plaintiff Citizens' case counsel for defendants — appellants here — filed motions to dismiss. After hearing arguments of counsel, Judge Taylor denied appellants' motion to dismiss.

Citizens thereupon moved for summary judgment, urging that there was no genuine dispute as to any material fact. Judge Taylor granted Citizens' motion for summary judgment, saying in the course of his oral opinion:

"I don't believe that consent, ratification, or estoppel plays any part in these proceedings as far as this case is concerned. Although the addition is an alteration, it did not affect a change in the contract of the parties, and as a consequence, is not material under our case law. The note speaks for itself in that it's a promise to pay $169,000 with certain set forth interest on demand. Since there was not a fraudulent and/or material alteration then I don't see how we can possibly conclude that these defendants were discharged. Thus, the plaintiffs would be entitled to judgment on the instrument. Oral testimony would not be admissible to vary the terms of the writing so we are left with the note, as the Court sees it, valid and viable as against the defendants, a note the terms of which cannot be altered by any oral testimony.

"Inasmuch as there is no denial of the signature of these parties on this note, I've got to ask where is there a factual issue cognizable by the Court and material to the question of liability on this note. I think my colleague saw the same thing that I see and the only thing that caused him to deny the summary judgment at that time was the question of consent. I don't find that issue relevant because I don't feel and do not find that we need to go that far. The alteration did not affect the agreement. I see no reason to deny the cross-plaintiff's motion for summary judgment. I will grant the motion for summary judgment. . . ."

In short, Judge Taylor granted the summary judgment that previously had been denied by Judge William B. Bowie.

Although a separate brief by one of the appellants states the issues before us in somewhat different style, the following submitted issues cover the contentions of all appellants:

"1. Whether a trial judge, consistent with due process, may grant a plaintiff's motion for summary judgment at the end of the plaintiff's case-in-chief, considering the plaintiff's evidence and denying the defendants a day in court for the presentation of their evidence.

2. Whether the law-of-the-case doctrine as it is applied in Maryland permits a trial judge to overrule and alter the law set forth at an earlier stage by a different trial judge in the same case.

3. Whether the law of Maryland discharges an endorser on a promissory note when there has been an alteration of the note, without the consent of the endorser, so as to change the date of issue of a demand note and thus to enlarge significantly the time in which the endorsers are vulnerable under their endorsements.

4. Whether an endorser is liable for contribution to the maker of a promissory note where the maker is also an endorser."

### Time of Entry of Judgment

Under Maryland Rule 610 a. 1., a motion for summary judgment may be made at any time. Although we have been referred to no case and have found none wherein the motion for summary judgment was made during the actual course of a trial, we find nothing in Rule 610 prohibiting entry of summary judgment at such a point in time if it then appears that there is no genuine dispute as to any material fact. Unnecessary use of judicial time need not be continued merely because it had earlier been expended. *Cf. Myers v. Montgomery Ward & Co., Inc.*, 253 Md. 282, 252 A. 2d 855 (1969).

42

We see no denial of due process in such a course. Rule 610 d. 2. reads as follows:

"d. *Proceedings on Motion.*

\* \* \*

2. Affidavit of Defense Not Available.

Should it appear from the affidavits of a party opposing the motion that he cannot for reasons stated present by affidavit facts essential to justify his opposition, the court may refuse the application for judgment or may order a continuance to permit affidavits to be obtained or depositions to be taken or discovery to be had or may make such other order as justice may require."

In the context of this litigation the issue whether due process of law has been denied is governed by the rule restated in *Blue Cross v. Franklin Sq. Hosp.,* 277 Md. 93, 352 A. 2d 798 (1976), namely, "Generally, due process requires that a party to a proceeding is entitled to both notice and an opportunity to be heard on the issues to be decided in a case." 277 Md. at 101, 352 A. 2d at 804.

The record shows that a clear opportunity was accorded to the appellants at the time of the motion to permit them to suggest the existence of an additional material factual dispute. They failed to do so.

There was, in short, no asserted factual dispute before the trial court beyond the allegations contained within the several previously filed amended affidavits.

We see no denial of due process.

The trial judge was required to assume the truth of all facts encompassed within the affidavits of the appellants and to accord to them all reasonable inferences deducible therefrom in making a determination whether the right of Citizens to judgment should be declared as a matter of law. This Court is required to do likewise.

Judge Finan, for the Court of Appeals, in *Brown v. Suburban Cadillac, Inc.*, 260 Md. 251, 255, 272 A. 2d 42, 44 (1971), said:

> "An appellate court, in reviewing a motion for summary judgment, should be concerned primarily with deciding whether or not a factual issue exists, and in this regard, all inferences should be resolved against the party making the motion. *Hilton v. Williams, supra,* at 288; *Lipcomb v. Hess, supra,* at 118; *Lawless v. Merrick, supra,* at 70. Be that as it may, when the moving party has set forth sufficient grounds for summary judgment, the party opposing the motion must show with some precision that there is a genuine dispute as to a material fact. *Foreman v. Melrod,* 257 Md. 435, 441, 263 A. 2d 559 (1970); *Fishman Const. Co. v. Hansen,* 238 Md. 418, 422-23, 209 A. 2d 605 (1965), and cases cited therein. And, the opposing party must make such a showing by facts which would be admissible in evidence. Maryland Rule 610 b; *Foreman v. Melrod, supra; Fishman Construction Co. v. Hansen, supra; Strickler Engineering Corp. v. Seminar, Inc.,* 210 Md. 93, 100, 122 A. 2d 563 (1956)." (Footnote omitted.)

In brief and argument in this Court appellants have offered bald allegations of fraud between Citizens and building contractor Baldi (subsequently a director of Citizens). The inadequacy of such bald allegations to prevent the award of summary judgment is beyond question. *Tri-State v. Middleman,* 238 Md. 41, 47, 207 A. 2d 499, 502 (1965).

We shall, accordingly, give full consideration to the facts set forth in the several affidavits suggested as requiring rejection of summary judgment but in the absence of any suggestion of admissible evidence of fraud in the obtention of the endorsements of the appellants, or fraudulent conduct in the alteration of the date, shall not give consideration to the bald allegation of fraud.

## Law of the Case Doctrine

Appellants contend that the earlier decision of Judge Bowie, denying summary judgment, had a binding effect upon Judge Taylor under the "law of the case doctrine." They rely upon *Philpot v. Gelston*, 126 Md. 589, 95 A. 485 (1915); *Cumberland Coal & Iron Co. v. Sherman*, 20 Md. 117 (1863), and *Thomas v. Doub*, 1 Md. 252, 324-25 (1851-52). We find their reliance misplaced.

*Thomas v. Doub* dealt with a chancellor's exercise of discretion that was "not in the power of [the appellate] court to remedy." (1 Md. at 324.)

*Cumberland Coal & Iron Co. v. Sherman* dealt with a second appeal in which the appellate court, asked to reverse its prior decision in litigation between the same parties, declined to do so, saying: " 'Where, upon appeal, the Appellate Court decides a question presented by the record, and the cause is remanded, the decision is binding both upon the court below and the Appellate Court, and cannot be reversed upon a second appeal.' " (20 Md. at 131.)

*Philpot v. Gelston* also dealt with a third appeal by which earlier appellate decisions involving the same parties were sought to be reversed. The Court declared: "If the Court of Appeals have disposed definitely of the subject, and fully and explicitly determined the rights of the parties, this Court ought to yield to the judgment, whatever our individual opinions may be of its correctness." (126 Md. at 595, 95 A. at 487.)

Assuming, without deciding, that the "law of the case doctrine" continues to be applicable where determination of the rights of parties have been established by final judgment, either by appellate decision or by unappealed *nisi prius* decision, we reject its application to non-dispositive pre-trial rulings by a judge of equal station.

Although expressly declared to be a question not required to be answered in *Insurance Company v. Thrall*, 181 Md. 19, 27 A. 2d 353 (1942), we find the language used in that case so persuasive upon the issue now clearly before us, that we

adopt it without qualification. Judge Sloan, speaking for the Court of Appeals in *Thrall,* said:

> "This naturally suggests the question as to whether a trial judge is bound at the trial to accept the rulings on the pleadings which have been passed upon by another judge. Trial courts are bound by the decisions of the Court of Appeals, until they may be overruled. Until then they are precedents to be followed and obeyed. There is no decision or statute which requires one *nisi prius* judge to accept as final and conclusive the decisions on the law before trial of another judge or court. There seems to be some sense, however, in the idea that the trial judge, who occupies a position of greater responsibility, should have the right to reject a prior decision of a judge of equal jurisdiction in the same case which he may believe to be erroneous." 181 Md. at 22-23, 27 A. 2d at 355.

This question was the subject of an in depth discussion by Judge Lowe for this Court in *Driver v. Parke-Davis Co.,* 29 Md. App. 354, 348 A. 2d 38 (1975), in the course of which he said at 362 [42]:

> "Our own Court '. . . has never . . . doubted that a judge presiding at a trial, unless specifically precluded, is free at any time during the trial to reconsider any prior ruling in the case, whether made by him or by another judge.' *Layman v. State,* 14 Md. App. 215, 230. In *Layman* we recalled that in *Walker v. State,* 12 Md. App. 684, 689, we had held that:
>
>> "While we agree that a trial judge may accept the pre-trial finding as *res judicata* and is under no obligation to readjudicate a settled question, we do not agree that he need feel bound by a pre-trial ruling with which he is in strong disagreement.'

And in *State v. Coffield,* 17 Md. App. 305, 314, we observed that it was error for one trial judge to feel bound by another trial judge's opinion, relying on our authority in *Walker* and *Layman.*"

Judge Lowe added at 362 [43]:

"The authority of a judge to reverse the decision here at issue of a fellow judge of the same court is clear. When that authority is exercised, the question becomes whether to do so was a proper exercise of discretion."

We find no abuse of discretion here.

### *Alteration as Discharging Endorsers*

In the consideration of the question whether Citizens is entitled to summary judgment as a matter of law, we are obliged to accept as true that the date on the demand promissory note upon which appellants were endorsers was altered by Citizens by striking out the date November 11, 1971 and inserting March 27, 1973, (a) without the knowledge and consent of the endorsers; and (b) without subsequent ratification of such alteration by the endorsers.

The circumstances under which an endorser will be discharged by alteration of a negotiable instrument are fixed by Md. Code Ann. Com. Law § 3-407 (1975) that reads in pertinent part as follows:

"§ 3-407. Alteration.

(1) Any alteration of an instrument is material which changes the contract of any party thereto in any respect, including any such change in

(a) The number of relations of the parties; or

(b) An incomplete instrument, by completing it otherwise than as authorized; or

(c) The writing as signed, by adding to it or by removing any part of it.

(2) As against any person other than a subsequent holder in due course

    (a) Alteration by the holder which is both fraudulent and material discharges any party whose contract is thereby changed unless that party assents or is precluded from asserting the defense;

    (b) No other alteration discharges any party and the instrument may be enforced according to its original tenor, or as to incomplete instruments according to the authority given."

Judge Taylor concluded that alteration of the date of this demand note from November 11, 1971 to March 27, 1973, under the circumstances of this case, was not a material alteration within the meaning of the statute. We agree.

There is a surface appearance that the altered date would change the contract of a party by extending the period of liability of the endorsers beyond that date to which, in the absence of such change, a plea of limitations successfully might be interposed. Analysis of the facts of this case, however, demonstrates that such a contention is illusory rather than real.

In the subject case the action was commenced within three years of the date originally placed upon the instrument. The endorsers would have been unable to interpose a plea of limitations even if the original date had been left unchanged. They would, in short, have been liable to Citizens even if no change had been made. Under such circumstances it is apparent that the change was not material. We do not reach the question whether the change may have been material had suit been deferred to a time beyond three years from the date entered upon it at the time of its making.

The evidence shows that the monies were in fact advanced by Citizens on the date ultimately placed upon the document. It is crystal clear that the endorsers knew, at the

time of the execution of their endorsements upon the note, that advance by Citizens of the monies required by its tenor would not occur until some date subsequent to that appearing upon the face of the document. The advance was made within three years from the execution date of the instrument. Suit was instituted within three years of that date. The alteration was not, in those circumstances, a material alteration changing the contract of any party. *See* Official Comment to § 3-407 n. 1; *Katski v. Boehm,* 249 Md. 568, 241 A. 2d 129 (1968).

The motion for summary judgment in favor of Citizens against appellants was properly granted.

### *Cross-Claim of Endorser for Contribution*

The cross-claim of John E. Stauch against the appellants and other co-endorsers of the instrument was grounded upon his and their agreement to be jointly and severally liable for its payment. It is patent, accordingly, that Stauch was entitled to contribution from his co-endorsers, if at all, only upon payment by him of Citizens' note and then only to the extent of the obligation shared by all solvent endorsers. *Billingsley v. Kelly,* 261 Md. 116, 129, 274 A. 2d 113, 120-21 (1971); *Jackson v. Cupples,* 239 Md. 637, 640, 212 A. 2d 273, 274-75 (1965).

The record extract in the subject case fails to establish that Stauch made any payment to Citizens either upon the note or upon the judgments extended against the several endorsers. In such circumstances, the judgment in favor of Stauch against his fellow endorsers was premature.

### *Motion to Dismiss Appeal*

Citizens filed a motion to dismiss the appeal, charging violation of Maryland Rules 1035 b. 7, 1031 a. and 1028 a. Although our examination of the record extract shows extensive departures from the requirements of the cited rules, it does not appear that the appellees were prejudiced

thereby. Consequently, the motion to dismiss is denied. *East Washington Railway Co. v. Brooke,* 244 Md. 287, 223 A. 2d 599 (1966).

> *Judgment in favor of Citizens against appellants affirmed.*
>
> *Judgment in favor of Stauch vacated without prejudice to his right to show entitlement to contribution.*
>
> *Four-fifths of the costs to be paid by appellants; one-fifth to be paid by appellee John E. Stauch.*