470 A.2d 1269

STATE of Maryland

v.

Antoine D. FRAZIER (94) Thomas Edward Weems & Lamont
Patton (95) Garry Shaw a/k/a Gary L. Shaw (96)
Mark Richardson (124).

Nos. 94, 95, 96 & 124 Sept. Term, 1982.

Court of Appeals of Maryland.

Feb. 7, 1984.

424

Carmina Szunyog, Asst. Atty. Gen., Baltimore (Stephen H. Sachs, Atty. Gen., William A. Swisher, State's Atty., for Baltimore City, Sandra L. Kemick, Haven Kodeck and Richard G. Scherr, Asst. State's Attys., Baltimore, for Baltimore City, on the brief), for appellant.

Gary W. Christopher, Asst. Public Defender, Baltimore (Alan H. Murrell, Public Defender, Baltimore, on the brief), for appellees.

Argued before MURPHY, C.J., SMITH, ELDRIDGE, COLE, DAVIDSON, RODOWSKY and COUCH, JJ.

ELDRIDGE, Judge.

These four criminal cases, involving five defendants, were dismissed prior to trial in the Criminal Court of Baltimore [1] on the ground that they were not tried within 180 days as required by Maryland Code (1957, 1982 Repl.Vol., 1983 Cum. Supp.), Art. 27, § 591, and Maryland Rule 746. The State took appeals in all four cases, raising similar issues concerning the operation of § 591 and Rule 746. Because of the importance of the questions presented, this Court issued writs of certiorari prior to argument in the Court of Special Appeals, and we directed that the cases be heard together. We shall reverse.

### I.

Before setting out the facts of each case, it would be useful to review the requirements of § 591 and Rule 746 as interpreted by this Court in *State v. Hicks,* 285 Md. 310, 403 A.2d 356, on motion for reconsideration, 285 Md. 334, 403 A.2d 368 (1979), and *Goins v. State,* 293 Md. 97, 442 A.2d 550

---

1. The Criminal Court of Baltimore is now part of the Circuit Court for Baltimore City. *See* Ch. 523 of the Acts of 1980, effective January 1, 1983. Generally in this opinion we shall, for convenience, use the phrase "Circuit Court for Baltimore City" to refer to both the present court and the former Criminal Court of Baltimore.

(1982), and to review the assignment system for criminal cases in the Circuit Court for Baltimore City.

### A.

Art. 27, § 591, was enacted by Ch. 212 of the Acts of 1971, and Rule 746 was promulgated in 1977 to implement § 591. The statute and the rule, applicable to criminal cases in the circuit courts, require that a trial date be set which shall not be later than 180 days after the appearance of counsel or the arraignment of the defendant, whichever shall first occur. Under § 591 and Rule 746, a postponement of the trial date must be made or approved by the administrative judge or a judge designated by him and only for good cause shown.[2]

---

2. Art. 27, § 591, provides as follows:

"§ 591. Setting date for trial; postponement.

(a) Within two weeks after the arraignment of a person accused of a criminal offense, or within two weeks after the filing of an appearance of counsel or the appointment of counsel for an accused in any criminal matter, whichever shall occur first, a judge or other designated official of the circuit court in which the matter is pending, shall set a date for the trial of the case, which date shall be not later than 180 days from the date of the arraignment of the person accused or the appearance or the appointment of counsel for the accused whichever occurs first. The date established for the trial of the matter shall not be postponed except for good cause shown by the moving party and only with the permission of the administrative judge of the court where the matter is pending.

(b) The judges of the Court of Appeals of Maryland are authorized to establish additional rules of practice and procedure for the implementation of this section in the various circuit courts throughout the State of Maryland."

Rule 746 states:

"Rule 746. Trial Date.

a. *General Provision.*

Within 30 days after the earlier of the appearance of counsel or the first appearance of the defendant before the court pursuant to Rule 723, a trial date shall be set which shall be not later than 180 days after the appearance or waiver of counsel or after the appearance of defendant before the court pursuant to Rule 723.

b. *Change of Trial Date.*

Upon motion of a party made in writing or in open court and for good cause shown, the county administrative judge or a judge designated by him may grant a change of trial date."

Before 1980, both § 591 and Rule 746 required "extraordinary cause" rather than "good cause" for the postponement. Both the

Soon after § 591 was enacted, but prior to the adoption of Rule 746, it was held in *Young v. State,* 15 Md.App. 707, 292 A.2d 137, *summarily aff'd,* 266 Md. 438, 294 A.2d 467 (1972), that the requirements of § 591 were only "directory" and not mandatory. Seven years later, however, in *State v. Hicks, supra,* we overruled the *Young* case, held that the time period for trying a circuit court criminal case was mandatory,[3] and held that if the case was not tried within that period and there was no postponement of the trial date complying with § 591 and Rule 746, dismissal of the criminal charges is ordinarily the appropriate sanction. There were several reasons for overruling *Young.* First, it was pointed out in the *Hicks* opinion that § 591 represented a legislative policy to obtain the prompt disposition of criminal charges, manifesting the Legislature's recognition that excessive delay in trying criminal cases is detrimental to the criminal justice system, but that this policy had been "largely unheeded" in light of the *Young* decision. 285 Md. at 316–317, 334, 403 A.2d 356. Second, we stated in *Hicks* that the adoption of Rule 746 was intended to "put teeth" into the statutory requirements governing the assignment of criminal cases for trial. *Id.* at 318, 403 A.2d 356. Finally, we pointed out that the holding in *Young* was contrary to the language of § 591 and Rule 746, *Id.* at 334, 403 A.2d 356.

Section 591 and Rule 746 require setting "a date for the trial" or "a trial date" within 180 days from arraignment or the appearance of counsel. Section 591 states that "[t]he date established for the trial" shall not be postponed except for good cause and with the approval of the administrative judge, and Rule 746 requires that "a change of trial date" be granted by the county administrative judge or his designee and only for good cause. Under this language, it could be argued either (1) that the statute and rule apply only to the

---

statute and the rule were amended in July 1980 to substitute "good cause" for "extraordinary cause."

**3.** When *Hicks* was decided, the time period set forth in Rule 746 was 120 days; it was changed to 180 days in 1979.

setting and postponement of the first trial date or (2) that the provisions apply to all scheduled trial dates in a case. In the *Hicks* opinion we indicated that every postponement of a circuit court criminal trial date was required to be granted by the administrative judge or his designee and only upon a showing of the requisite cause. 285 Md. at 316–318, 403 A.2d 356. *See Guarnera v. State,* 20 Md.App. 562, 572–573, 318 A.2d 243, *cert. denied,* 272 Md. 742 (1974), cited and quoted with approval in *Hicks. See also Bethea v. State,* 26 Md.App. 398, 400–401, 338 A.2d 390 (1975). At the same time, we made it clear in *Hicks* that the purpose of § 591 and Rule 746 was to set a time limit for the trial of a criminal case, that the dismissal sanction was applicable when the case was not tried within that time limit and not postponed in accordance with § 591 and Rule 746, but that the dismissal sanction was inapplicable to violations of § 591 and Rule 746 which did not prevent the case from being tried within the prescribed time period. 285 Md. at 318, 320, 334, 335, 403 A.2d 356. Thus, when there are several orders by the administrative judge postponing a criminal trial, and one of those orders has the effect of postponing the trial beyond the 180-day deadline, it is the latter order with which a judge hearing a motion to dismiss is concerned. The critical order by the administrative judge, for purposes of the dismissal sanction, is the order having the effect of extending the trial date beyond 180 days.

■ This Court also stated in the *Hicks* opinion that § 591 and Rule 746 were not intended to be codifications of the constitutional speedy trial right but stand "on a different legal footing." 285 Md. at 320, 403 A.2d 356. In addition, we emphasized that one circumstance where the dismissal sanction was inappropriate was "where the defendant, either individually or by his attorney, seeks or expressly consents to a trial date in violation of Rule 746." *Id.* at 335, 403 A.2d 356.

Finally, the Court held in *Hicks* (285 Md. at 336–338, 403 A.2d 356) that the overruling of *Young v. State* and the new

rulings in the *Hicks* opinion should be given prospective effect under the principles set forth in cases such as *Stovall v. Denno,* 388 U.S. 293, 296–297, 87 S.Ct. 1967, 1969–1970, 18 L.Ed.2d 1199 (1967); *Linkletter v. Walker,* 381 U.S. 618, 636, 85 S.Ct. 1731, 1741, 14 L.Ed.2d 601 (1965); and *Wiggins v. State,* 275 Md. 689, 344 A.2d 80 (1975). *See also McClain v. State,* 288 Md. 456, 419 A.2d 369 (1980). In reaching this conclusion, we pointed out that "the new interpretation announced does not relate to the fact-finding determination of whether a defendant did the act, but, like the exclusionary rule involved in *Linkletter v. Walker, supra,* is a prophylactic measure designed to insure compliance with the requirements imposed on the State regarding prompt trials of criminal cases. It is the type of new ruling that is almost invariably not given retroactive effect." 285 Md. at 337, 403 A.2d 356.

Three years after *Hicks,* in *Goins v. State, supra,* this Court reiterated that dismissal was the appropriate sanction if a circuit court criminal case was not tried within the 180-day time period, and if there was no order by the administrative judge, based on good cause, postponing the trial beyond the 180-day deadline, and if the defendant did not seek or expressly consent to a trial date in violation of § 591 and Rule 746. Under such circumstances, dismissal would be the appropriate sanction even if the delay may have been for the defendant's benefit, or the defendant may have engaged in dilatory conduct, or the prosecution may have been free of fault. 293 Md. at 100, 106–109, 112, 442 A.2d 550. We repeated in *Goins* that § 591 and Rule 746 were not intended to be codifications of constitutional speedy trial analysis. *Id.* at 109, 442 A.2d 550.

In the *Goins* opinion we reaffirmed that the State has the duty of bringing the defendant to trial, that the defendant has no duty to bring himself to trial, and that, therefore, the defendant has no obligation to seek a postponement under § 591 and Rule 746. 293 Md. at 109–110, 442 A.2d 550. *Goins* also held that, under § 591 and Rule 746, the administrative judge may, for good cause, order a postponement of

the trial date on his own motion. *Id.* at 110–111, 442 A.2d 550.[4] Lastly, we held in *Goins* that when an order of the administrative judge necessarily has the effect of postponing the trial date past the 180-day deadline, and the order is supported by good cause, such order complies with § 591 and Rule 746 regardless of whether the administrative judge was conscious of the 180-day deadline. *Id.* at 111–112, 442 A.2d 550.

### B.

As a result of the *Hicks* decision, it was necessary that procedures be adopted in various subdivisions to assure that criminal cases be tried in conformity with § 591 and Rule 746. The subdivision with the greatest criminal caseload, and thus presenting a real need for an efficient assignment system, was Baltimore City. For example, in fiscal year 1983 there were 8,571 new criminal cases filed in the Circuit Court for Baltimore City, consisting of 4,147 felony cases and 4,424 misdemeanor cases. The criminal assignment system which evolved in the Circuit Court for Baltimore City is as follows.[5]

Within a few weeks after the filing of every criminal case in the Circuit Court for Baltimore City, a mandatory arraignment is routinely held.[6] At the arraignment there is present someone from the criminal division of the Central

---

4. *See also Howell v. State,* 293 Md. 232, 242, 443 A.2d 103 (1982).

5. The description of the criminal case assignment system in the Circuit Court for Baltimore City and the statistics contained in this portion of the opinion are largely taken from Karwacki, *Countdown to Supreme Bench Consolidation,* 4 The Baltimore Barrister 5 (No. 4 1983); Riggin, *Circuit Court for Baltimore City—Criminal Court Overview* (Distributed by the Circuit Court for Baltimore City, July 13, 1983); and from the testimony in the instant cases. In addition, we take judicial notice of the operation and practices of the courts of this State, *Davidson v. Miller,* 276 Md. 54, 79–81, 344 A.2d 422 (1975).

6. In felony cases, the arraignment is within two or three weeks after the filing of charges. The time period is slightly longer in misdemeanor cases.

Assignment Office [7] with the necessary data for the assignment of a trial date, and at that time a trial date is assigned for each case except those which are terminated at the arraignment. This initial trial date is usually within ninety days from the arraignment but in all cases within 150 days.[8] Administrative Judge Karwacki has described the initial scheduling of cases, and the operation of what is called the "move list," as follows (Karwacki, *Countdown to Supreme Bench Consolidation*, 4 The Baltimore Barrister 5, 5–6 (No. 4 1983)):

> "At the criminal arraignment, felony cases are scheduled into nine criminal courts, ten per court per week. Misdemeanor cases appealed from the District Court or removed from that Court prior to trial on a request for jury trial are scheduled before one criminal court at the rate of 60 per week. All of these cases are scheduled as potential jury trials since under Maryland law the defendant is permitted to change his election as to mode of trial at any time within 48 hours prior to trial. Two criminal courts are undocketed and stand ready to handle overflow from the criminal docketed courts. At a conference held daily before me as the administrative judge the current state of the docket is assessed and requests for postponements and priority status for the cases awaiting trial are considered. Because of the deliberate overscheduling of criminal cases we are able to insure the minimum of down time on the part of any criminal court judge. When a

---

**7.** The Central Assignment Office is itself part of the Clerk's Office of the Circuit Court for Baltimore City.

**8.** After a trial date is assigned, there is a computerized procedure for sending a notice and summons to the defendant 28 days and 9 days before trial, and if he is incarcerated a writ of habeas corpus is issued to the institution. The defense attorney receives a notice of the trial date as soon as it is placed in the computer, another notice 28 days before trial, and a third notice 9 days before trial. All witnesses receive a mailed summons 28 days prior to trial and a personal service summons from the Sheriff 9 days before trial, and if a witness is incarcerated a writ is issued to the institution. *See* Riggin, *Circuit Court for Baltimore City—Criminal Court Overview, supra,* at 4.

judge completes his assigned cases for the day he is immediately assigned a case from the 'move' or 'ready' list of cases which are awaiting trial. An attempt is made through the daily scheduling conferences to maintain the 'move' or 'ready' list at between 10 and 20 cases. To insure prompt movement of the cases on 'move' or 'ready' status to an available court, an assignment office monitor personally surveys the status of proceedings in each of the 11 felony trial courts twice a day and reports that status at 11 a.m. and 3 p.m. to the administrative judge. Should a court become available at any time prior to 4 p.m. a case from the 'move' or 'ready' list is moved to that court."

The majority of cases assigned a trial date are ultimately disposed of by guilty plea, nol pros, or stet. For this reason, as pointed out above by Judge Karwacki, there must be a deliberate overscheduling of criminal trials. Otherwise initial trial dates would have to be set far into the future, judges would be available for great periods of time without cases to try, and few if any cases would be tried within 180 days. Nevertheless, there is no way to determine precisely for a particular period how many cases will be disposed of by guilty plea, nol pros or stet, and thus how much overscheduling should be done for that period. As Assignment Commissioner George B. Riggin, Jr., has explained (Riggin, *Circuit Court for Baltimore City—Criminal Court Overview,* 4 (Distributed by the Circuit Court for Baltimore City, July 13, 1983)):

"Scheduling dockets into the future is more of an 'art' than a 'science'. It involves the prediction of complex trial events which have no guaranteed certainty and can change from moment to moment. Despite the confusion, certain known factors allow future dockets to be assembled with some degree of rationale. For example, although we may not know specifically which cases will plead out, we nevertheless know that 80–85% will never go to trial. This concept dictates the technique called 'overscheduling'.

"The general guidelines which are used in loading the future dockets can be described .... These guidelines are periodically adjusted as the caseload dictates or due to some specific knowledge about a protracted case ...."

Because criminal case scheduling is not a precise science, because trials may take longer than anticipated, and because in a particular time period fewer cases than predicted may be disposed of by guilty plea, nol pros or stet, there will be occasions in any busy jurisdiction when the scheduled judge is not available to conduct a trial on the assigned date. In Baltimore City most such cases will be placed by the administrative judge on the so-called "move list," to be tried by one of the two "move courts" or by the first other available judge.[9] A case on the move list will typically be tried by a different judge on the scheduled trial date or within a few days thereafter. But, in order for the "move list" mechanism to work, and in order to try such cases within a few days of the scheduled trial date, the move list can accommodate only a limited number of cases. If, in the judgment of the administrative judge, a criminal trial cannot be reached in the scheduled court on the assigned trial date and cannot be accommodated on the move list, the administrative judge ordinarily will conclude that "good cause" for a postponement exists and that a new trial date must be assigned.

Administrative Judge Karwacki, or in his absence another judge designated by him as acting administrative judge, is available at noon each day to hear motions for trial postponements in criminal cases or to consider criminal cases which, for whatever reason, apparently cannot be tried that day. After hearing argument (and evidence if any is offered), the administrative judge determines whether or not good cause exists for a postponement. If the administrative

---

9. As Assignment Commissioner Riggin testified in the instant cases, in addition to the two regular "move courts," each judge of the Circuit Court for Baltimore City "functions as a potential move court if he should complete his docket." Such judge is available for the purpose of absorbing an "overflow" of criminal cases or receiving them from an overburdened judge.

judge agrees that a case cannot be reached in the scheduled court that day, he decides whether it can be accommodated on the move list or whether there should be a postponement and a new trial date assigned.

The Circuit Court for Baltimore City has developed a form of order, sometimes referred to as the "standard postponement form," to reflect what occurs at the postponement hearing. The information to be recorded on this form includes the essential data concerning the criminal case, the charges, the type of trial requested and the trial date, whether there had been prior trial postponements, which side requested the postponement, whether opposing counsel agrees, and whether the administrative judge approves the postponement request. The form has a space for entry of the reasons for postponing the case, the signature of the administrative judge and the new trial date. If, after hearing from the parties, the administrative judge concludes that good cause exists for a postponement, the necessary data is at that time recorded on the form and the administrative judge signs the form.

At every one of these postponement hearings, the court clerk is someone from the Central Assignment Office, and it is that clerk's responsibility to insure that the form is correctly filled out. Nevertheless, the prosecuting attorney often fills in the data for the clerk.

When the administrative judge orders a trial postponement, he is occasionally aware of a definite time period in the near future when, because of some unexpected development, there will be a judge who is available for the trial of criminal cases but to whom no cases have been assigned. In this event, a new trial date may be assigned at the postponement hearing and entered on the order. Ordinarily, however, a new trial date will not be assigned at the postponement hearing and, therefore, will not be entered on the order. Instead the clerk at the postponement hearing, after insuring that the other data is recorded and the administrative judge has signed the order, is responsible for delivering

the order to the Central Assignment Office for the selection of a new trial date.

Upon receipt of the signed postponement order, the Central Assignment Office selects a new trial date. The Office picks the first available date under the normal guidelines for the assignment of trials, although the testimony in the instant cases suggested that, if such date is beyond the 180-day period, it may sometimes be possible to assign an earlier date. The Assignment Commissioner takes the position that it is the primary responsibility of the State's Attorney's Office to determine if the new trial date in a previously postponed case is within the 180-day time period, and, if it is not, to notify the Assignment Office so that an earlier date can be selected if possible. Nevertheless the personnel in the Assignment Office, as a check upon the State's Attorney's Office, also normally calculate the 180-day deadline and try to select a new trial date prior to that deadline.

## II.

The relevant facts in each of the four cases before us are as follows.

### No. 94, *State v. Frazier*

On June 9, 1981, the State filed in the Criminal Court of Baltimore a criminal information against Antoine Frazier, charging him with robbery and related offenses. The appearance of Frazier's attorney was entered on June 30, 1981, and Frazier's arraignment was on the same date, with him pleading "not guilty" and praying a jury trial. Therefore, the 180-day period for trying the case would expire on December 27, 1981.

Frazier's trial was initially scheduled for September 3, 1981. On that date, both the prosecuting attorney and the defense attorney were ready to begin the trial, with their witnesses available, but the case could not be reached. The attorneys then appeared before the designated administrative judge (Grady, C.J.), and the Assistant State's Attorney

requested that the case be placed upon the move list, although he acknowledged "that the move list is full." Chief Judge Grady declined, stating that "the system cannot accommodate you on the move list." The designated administrative judge found that there was good cause for a postponement because of the "unavailability of a court" [10] and the seventeen cases already on the move list for the next available court. The assignment office selected a new trial date of December 14, 1981, which was 167 days after arraignment.

Again on December 14, 1981, the case could not be reached, and a hearing was held on that date before the administrative judge (Karwacki, J.). Administrative Judge Karwacki found good cause to postpone the trial "due to an excess buildup of cases awaiting trial with no courtroom available" and with "29 cases already pending on the list to be moved to the first available court." The new trial date selected was March 23, 1982, which was 266 days after arraignment.

■ When the case was called on March 23, 1982, the defendant Frazier orally moved to dismiss for failure to comply with § 591 and Rule 746. At the conclusion of the argument on the motion, the trial judge dismissed the case.[11]

---

**10.** When judges or other personnel in the Circuit Court for Baltimore City refer to the unavailability of a "court" or "courtroom," they are referring to the lack of a trial judge and not the absence of a physical facility.

**11.** Under subsections c and d of Rule 736, a motion capable of determination before trial, which would ordinarily include a motion to dismiss for an alleged violation of § 591 and Rule 746, may be filed at any time before trial and is required to be in writing "unless the court otherwise directs." In light of the quoted language, the trial court in its discretion may entertain an oral motion to dismiss such as made in the *Frazier* case. Even if the quoted language had not been contained in the Rule, the trial judge's willingness to entertain an oral motion is the type of action which would not be reviewable on appeal absent a showing of abuse of discretion. *Cf., e.g., Caton Ridge v. Bonnett*, 245 Md. 268, 276, 225 A.2d 853, 28 A.L.R.3d 1006 (1967); *Easter v. Dundalk Holding Co.*, 233 Md. 174, 179–180, 195 A.2d 682 (1963); *Kirchner v. Alled Contractors*, 213

The trial judge ruled that there was not good cause for the delay, observing that her "Court has been available on a number of occasions." It is unclear from the trial judge's remarks whether she was finding lack of good cause for any postponement on December 14, 1981, or a lack of good cause for the delay until March 23, 1982, or both.[12]

### No. 95, *State v. Weems and Patton*

On July 7, 1981, in the Criminal Court of Baltimore, Thomas Edward Weems and Lamont Patton were indicted together on charges of armed robbery occurring on June 6, 1981, and related offenses. Weems and Patton were arraigned and the appearance of their counsel was entered on July 28, 1981. Consequently, the 180-day limit under § 591 and Rule 746 was to expire on January 24, 1982. Trial was set for October 14, 1981, 78 days after their arraignment. In August 1981, the defendants filed demands for a speedy trial, motions to suppress evidence, and a motion to dismiss because of alleged defects in the charging documents.

The case could not be reached on the October 14, 1981, trial date, and the attorneys were instructed to go before the administrative judge. There were apparently two reasons for the inability to try the case on October 14th. First, the trial judge to whom the case was assigned could not reach it because he was trying a case which had been continued from a previous day. Second, the assigned public

---

Md. 31, 36, 131 A.2d 251 (1957). Specifically with regard to requirements concerning motions, *see Keating v. Keating,* 43 Haw. 51, 52–54 (1958); *James v. Brumlop,* 94 N.M. 291, 609 P.2d 1247, 1250 (1980). *See also United States v. Hicks,* 524 F.2d 1001, 1003–1004 (5th Cir.1975), *cert. denied,* 424 U.S. 946, 96 S.Ct. 1417, 47 L.Ed.2d 353, 425 U.S. 953, 96 S.Ct. 1729, 48 L.Ed.2d 197 (1976), and cases there cited; *Arkansas State Highway Comm. v. Brown,* 241 Ark. 862, 410 S.W.2d 737, 739 (1967); *Pomerantz v. Goldstein,* 479 Pa. 175, 387 A.2d 1280, 1281 (1978).

12. In addition to his motion to dismiss, Frazier had filed many months before the trial date a motion to suppress evidence. This motion has never been ruled upon.

defender for the defendant Weems stated to Administrative Judge Karwacki on October 14th as follows:

"My client, for the record, has indicated to me that he doesn't think I am prepared, in that this case was paneled [assigned] to me October first. I have seen him twice at the jail; however, he thinks I need more time and he needs more time."

Judge Karwacki found that there was good cause to postpone the case, and he refused to place the case on the move list because there were already twenty cases on that list. Knowing that there would be an available judge during the first week of November 1981, Judge Karwacki gave the attorneys the option of either choosing a date certain during that week or having the case postponed to the next available date thereafter as selected by the Assignment Office. The prosecuting attorney and both defense attorneys selected November 5, 1981, as the trial date, and the case was postponed to November 5th, to be tried in Part 4 of the Criminal Court of Baltimore on that date. The clerk from the Assignment Office attending the administrative judge's hearing placed two "x's" on a sheet of paper titled November 5th to indicate that two cases were set for that date, but she did not record the names or numbers of the cases. Also there was a failure to follow the normal procedure of filling out the standard postponement form and submitting it to the Assignment Office.

Patton's attorney and the prosecuting attorney arrived at Part 4 of the Criminal Court of Baltimore on November 5th to try the case. They discovered that the case was not on the docket, that the defendants had not been brought from jail, that the court files had not been delivered, that no witnesses were present, and that Weems's attorney was absent. An inquiry at the Assignment Office disclosed that the Office had no knowledge that the case was supposed to be tried on November 5th. Because of a failure after the October 14th hearing to notify the Assignment Office of the November 5th trial date, the computer did not generate the necessary paperwork to place the case on the November 5th

docket, issue the appropriate summonses, send notices to counsel and issue writs to assure that the defendants were brought from jail to court.

In light of this, there was no court available on November 5th to try the case, and necessary persons were absent. Consequently, the prosecuting attorney and Patton's attorney appeared before Administrative Judge Karwacki on November 5th, and Judge Karwacki signed an order postponing the case. This time the postponement form was properly transmitted to the Assignment Office, and a new trial date of January 28, 1982, was assigned.[13] The date was four days beyond the 180-day limit prescribed by § 591 and Rule 746.

On January 20, 1982, the defendant Weems filed a written motion to dismiss, asserting two grounds: 1. a violation of § 591 and Rule 746; 2. a violation of his right to a speedy trial under the Sixth Amendment to the United States Constitution and Article 21 of the Maryland Declaration of Rights. An extensive hearing on the motion, with testimony from a court employee, was held before Judge Ross on January 28, 1982, and the hearing continued on January 29, 1982. At the beginning of the hearing, the defendant Patton orally joined in the motion to dismiss. When the hearing concluded, Judge Ross denied the motion to dismiss insofar as it was based upon a claimed violation of § 591 and Rule 746, ruling that there was good cause for the postponements by the administrative judge and that "there is nothing that has been done by anyone that is inconsistent with [Rule] 746." Judge Ross expressly did not rule upon that part of the motion asserting a denial of the constitutional

---

**13.** Although it is clear that the postponement form was filled out and signed by the administrative judge on November 5, 1981, the form was, for reasons not fully explained by the record, back-dated to October 15, 1981. In addition, the postponement form incorrectly indicated that there had been no prior postponements, that there had been no requests for a speedy trial, and that one of the defense attorneys had consented to the postponement. The prosecuting attorney filled out the postponement form and, after it was signed by Judge Karwacki, took it to the Assignment Office.

right to a speedy trial, pointing out that another judge was waiting to receive the case for trial and indicating that the trial judge should hear the speedy trial issue.

Thereafter on the same day, January 29th, the case was called for trial before Judge Hammerman. Following the defendants' reiteration of their not guilty pleas and their desire for a jury trial, and defense counsel's review of the various pre-trial motions which had been filed, defense counsel requested the court to reconsider the motion to dismiss based upon an asserted violation of § 591 and Rule 746 and to hear additional evidence and argument that had not been presented to Judge Ross. After considerable discussion, the trial judge agreed to reconsider the § 591 and Rule 746 question, stating that he would hear evidence on that issue and the constitutional speedy trial issue together and that he would "rule first . . . on [Rule] 746 and then, if necessary, on the speedy trial [issue] after that." Following a review of the prior postponements, there was testimony from the "Postponement Clerk" (also called the "Docket Assignment Clerk"), a supervisor in the Assignment Office, the Assignment Commissioner, and both defendants.

The witness who was a supervisor in the Assignment Office testified that, after the postponement form was received on November 5, 1981, she assigned the January 28, 1982, trial date which was the "earliest available date to set the case in." She further testified that even if the postponement form had been correctly marked to show that the defendants had requested speedy trials and that neither defense attorney had consented to the postponement, she would not have been able to select an earlier trial date "because the dockets were overloaded" and "I just looked for the earliest available date and that is what I gave." After the supervisor selected the January 28th trial date, she left the postponement form on the desk of the Postponement Clerk for the latter "to check it out and put it in the computer." She explained that the Postponement Clerk normally "check[s] the first appearance of the attorney and the arraignment date [to determine] if the trial [date] was

within one hundred eighty days." The supervisor herself did not ascertain whether the January 28th date was within 180 days, as she relied upon the Postponement Clerk to do this. The Postponement Clerk, however, testified that she did not follow her normal procedure of checking to determine whether the January 28th date was more than 180 days from arraignment because she did not initially process the form, and she assumed that the person who had selected the trial date "would have already screened it." Neither the supervisor nor the Postponement Clerk indicated that an earlier trial date could have been secured if they had been aware that January 28, 1982, was 184 days beyond the arraignment.

As previously indicated, the Assignment Commissioner testified generally concerning the assignment of cases in the Criminal Court of Baltimore. With regard to the January 28th trial date in the *Weems and Patton* case, the Assignment Commissioner's testimony suggested that if the personnel in his office had been aware that this date was four days beyond the 180-day deadline, an earlier trial date might have been secured. Although reiterating his view that it was the ultimate responsibility of the State's Attorney's office to monitor the trial date in light of § 591 and Rule 746, and to notify the Assignment Office of a problem, the Assignment Commissioner did acknowledge that there had been a "slip up" in his office's checking of the matter. Similarly, concerning the earlier failure to notify the Assignment Office of the November 5th trial date, the Assignment Commissioner indicated that the Assignment Office clerk attending the administrative judge's hearing on October 14, 1981, should have seen to it that the necessary data was placed on the form and delivered to the Assignment Office.

At the conclusion of the hearing, the trial judge granted each defendant's motion to dismiss, ruling that there had been a violation of § 591 and Rule 746. In his oral opinion, the trial judge found that neither the defendants nor their counsel had consented to the postponement of the November 5th trial date. The judge found that the failure to try the

case on November 5th, and the failure thereafter to secure a new trial date within the 180-day deadline, was "the State's own fault, entirely," viewing the State as "the State's Attorney's office, the administrative judge, and the assignment office." While not expressly using the statutory "good cause" terminology, Judge Hammerman appeared to find both a lack of good cause for the postponement on November 5th and a lack of good cause for the length of the postponement to January 28th.[14]

### No. 96, *State v. Shaw*

An information was filed in the Criminal Court of Baltimore on August 26, 1981, charging Gary Shaw with armed robbery and related offenses. Shaw was released on bail, and has remained on bail ever since. The appearance of Shaw's attorney was entered on September 18, 1981, and Shaw was arraigned on that date, pleading "not guilty" and electing a jury trial. The trial was scheduled for December 18, 1981, 91 days after arraignment.

On the December 18th trial date, the prosecution moved for a postponement. At the hearing on the motion before the designated administrative judge, the prosecuting attorney argued as follows:

"If your honor please, the State is asking for a very, very short postponement in this matter, the reason being, I found out just this morning that a co-defendant's case is scheduled for January 6 in Criminal Court Part VII. I would move to consolidate. There is no Hicks problem. We are well within the 180 days."

The defense attorney "vehemently" objected to the postponement, stating that he was prepared for trial "today," that he "had no knowledge there was a co-defendant in this case," that he was opposed to a consolidation and that he wanted "a severance between all co-defendants we didn't even know about." The designated administrative judge

---

14. Neither the constitutional speedy trial issue nor the other pre-trial motions were ruled upon by the trial judge.

granted the State's motion for a postponement, finding that "good cause exists." The judge expressed the opinion that the matter of consolidation "justifies a two-week investigation," and that the question of severance should be decided on January 6th. The standard postponement form was filled out and delivered to the Assignment Office, and the trial date of January 6, 1982, was assigned.

On January 6, 1982, there was no court available for a jury trial of the case as desired by the defendant Shaw. The co-defendant pleaded guilty, and the attorneys in the *Shaw* case appeared before Administrative Judge Karwacki. At the January 6th hearing before Judge Karwacki, the State represented that it was prepared for trial and asked that the case be placed on the move list. Defense counsel, pointing out that the case had previously been postponed over the objection of the defense, opposed any further postponement. Judge Karwacki, however, refused to put the case on the move list and *sua sponte* postponed it, stating that "[t]here are just not enough courts for all our business." The postponement form signed by Judge Karwacki stated that the postponement was necessary because of the "excess buildup of cases awaiting trial with no courtroom available" and because "[t]here are currently 26 cases already pending on the list to be moved to the first available court."

The 180-day period from the date of arraignment ended on March 17, 1982. Nevertheless, the new trial date selected by the Assignment Office was April 15, 1982, 209 days after arraignment.

On the morning of trial, the defendant filed a written motion to dismiss, claiming a violation of § 591 and Rule 746. When the case was called for trial later on April 15th, there was argument on the motion plus the testimony of the Deputy Criminal Assignment Commissioner.[15] After the

---

15. While the defendant captioned the motion as a "Motion To Dismiss For Lack Of Speedy Trial And For Violation Of Rule 746," the body of the motion and the defendant's oral argument was based

argument and testimony, the trial judge granted the motion, concluding that there was a violation of § 591 and Rule 746. The ruling was not based on a finding that the inability to try the case on January 6, 1982, was unsupported by good cause. Instead the trial judge was of the view that there was an absence of good cause for the length of the delay beyond January 6th, and that the Assignment Office should have selected a new trial date prior to the expiration of the 180-day deadline on March 17, 1982.

### No. 124, *State v. Richardson*

Mark Richardson was charged in the Criminal Court of Baltimore on September 18, 1981, with storehouse breaking and being a rogue and vagabond. On October 9, 1981, the appearance of Richardson's attorney was entered and Richardson was arraigned, at which time he pled not guilty and elected a jury trial. The 180-day deadline under § 591 and Rule 746 would, therefore, expire on April 7, 1982. A suppression motion under Rule 736 was filed, and a trial date of January 7, 1982, was assigned. During the pre-trial period, the defendant was in the custody of the State Division of Correction, serving a sentence on an unrelated conviction.

On the morning of January 7, 1982, the court, the prosecuting attorney and the defense attorney were ready to try the case when it was discovered that the Division of Correction had sent the wrong Mark Richardson to the Baltimore City Courthouse. Inquiry at the Division of Correction disclosed that there were three Mark Richardsons in the Division's custody, that correction officials had "been working on it all morning and they can't tell which Mark Richardson is which." The prosecuting attorney then appeared before Administrative Judge Karwacki and informed him of

---

exclusively upon the asserted violation of § 591 and Rule 746. There was no mention of the constitutional right to a speedy trial.

the facts.[16] Judge Karwacki directed that writs of habeas corpus be issued to bring all three Mark Richardsons to the courthouse in order that there could be a "line up" to identify the defendant. He also determined that, because the Division of Correction had still not identified the defendant, there was good cause for a postponement and the case would have to be postponed. Judge Karwacki signed the standard postponement form which recited that there was good cause for a postponement because the "Division of Correction brought [the] wrong Mark Richardson to court. There are three of them, and they can not figure out who is who." The form was delivered to the Assignment Office, and a new trial date of May 3, 1982, was assigned. This exceeded the 180-day deadline by 26 days.

The case could not be reached on May 3rd because of the unavailability of a judge and it was placed on the "move list." A judge was available on the next day, May 4th, and the case was called for trial.

At the beginning of the trial proceedings, the defense attorney made an oral motion to dismiss based upon an asserted violation of § 591 and Rule 746. Richardson's attorney argued that the postponement on January 7, 1982, was not supported by good cause, asserting that the State "could easily have found the necessary information" regarding the correct Mark Richardson because "obviously it is on the computer." Alternatively, the defense attorney contended that "even if good cause was shown" for the postponement on January 7th, there was insufficient cause for the length of the delay thereafter. The prosecuting attorney, in addition to arguing that there was good cause for the postponement until May 4th, suggested that the defendant's attorney had consented to a trial date beyond the 180-day period by "sit[ting] idly by while the case is set outside the *Hicks* limit." The prosecuting attorney indicated that the

---

16. Defense counsel was not present at this hearing before the administrative judge.

failure to object to the postponement, and the failure to object to the new trial date before the expiration of the 180-day period, precluded the defendant from obtaining a dismissal.

The trial judge rejected the State's argument that defense counsel had consented to the January 7th postponement or consented to a trial beyond the 180-day deadline. The judge held that under the *Hicks* and *Goins* opinions, such consent by the defendant or his counsel must be "express" in order to preclude the sanction of dismissal for a violation of § 591 and Rule 746, and that Richardson's attorney had not "expressly" consented. The judge rejected the defense contention that there was an absence of good cause for any postponement on January 7th, stating that the administrative judge's "reasons that existed on January 7th for postponing the case were adequate; these mistakes occur." Nevertheless the trial judge ruled that there was insufficient cause "to wait until May 3rd, well outside the *Hicks* time, to schedule the case for trial." Consequently, the case was dismissed.

### III.

In appealing the dismissals, the State makes the same two arguments in all four cases. First, the State contends that the authority to determine "good cause" within the meaning of § 591 and Rule 746 is vested in the administrative judge, and that a trial judge deciding a motion to dismiss is not authorized to "overrule" the administrative judge's finding of good cause "absent a clear showing of abuse of discretion." According to the State, no such showing was made in these cases. Second, the State argues that, even if a trial judge is authorized independently to determine good cause, there existed good cause for all of the postponements in these cases and that there was no "undue delay" from the dates of the critical postponements until the

trial dates. Thus, the argument continues, there was full compliance with § 591 and Rule 746.[17]

The defendants, on the other hand, argue that a judge hearing the motion to dismiss is entitled to make an independent assessment concerning good cause. The defendants' attorneys [18] go on to state in *Frazier* and *Shaw* that "[t]he sole issue in [these two] case[s] is whether an overcrowded court docket may constitute good cause for postponing a case," and they assert that "postponement of [each defendant's] case due to an overcrowded docket was as a matter of law not based upon 'good cause.' " In *Shaw,* they make the alternate argument that even if the crowded docket constituted good cause for the January 6, 1982, postponement, "the *extent* of the postponement was not justified by whatever cause existed on January 6."

With respect to *Weems and Patton* the defendants contend that, because of the failure of state personnel (both the prosecuting attorney and persons in the court system) to prepare and process the paperwork so that the case could be tried on the November 5, 1981, trial date, there was an

---

17. In addition to the two arguments made in all of the cases, the State in its brief in the *Richardson* case, as it did in the trial court, places some reliance on the defense attorney's failure to object to the postponement on January 7, 1982, and failure to object at the time a new trial date was selected. Nevertheless, the trial judge was clearly correct in holding that the defense attorney's failure to object would not preclude a dismissal if § 591 and Rule 746 were violated. The defense attorney's conduct in this case is not what was contemplated in *Hicks* when we stated that a

"circumstance where it is inappropriate to dismiss the criminal charges is where the defendant, either individually or by his attorney, seeks or expressly consents to a trial date in violation of Rule 746." 285 Md. at 335, 403 A.2d 356.

And in *Goins,* with respect to certain allegedly dilatory conduct by defense counsel, we held (293 Md. at 108, 442 A.2d 550):

"At best, it might arguably constitute an *implied* consent to a postponement of the trial date, depending upon the circumstances. However, in order to avoid such doubts and controversies, *Hicks* carefully limited this exception to the situation where the defendant seeks or *expressly* consents to a trial date in violation of the rule."

18. The same defense attorneys represent all of the defendants in the four cases before this Court.

absence of "good cause" for the November 5th postponement. In the *Richardson* case, the defense maintains that the failure of the State to produce the defendant for trial on January 7, 1982, was not good cause for the postponement on that date. Alternatively it is claimed that the extent of the postponement, to early May, was not supported by good cause.

■ As recognized in both the State's and the defendants' arguments in these cases, the requirement in § 591 and Rule 746 that there be "good cause" for a postponement of the trial date to a new date beyond the 180 day deadline has two components: 1. there must be good cause for not commencing the trial on the assigned trial date; 2. there must be good cause for the extent of the delay. In fact, as previously discussed, the trial judges' dismissals in the *Shaw* and *Richardson* cases, and perhaps the dismissals in the other two cases, implicated the second component rather than the first. The rulings in *Shaw* and *Richardson* were based on the view that there was an unreasonable length of time between the old and the new trial dates.[19] In dealing with the issues in these cases, it is important to distinguish these two aspects of "good cause."

## IV.

The threshold question in these cases concerns the authority of a judge, hearing a motion to dismiss based upon an

---

**19.** In the *Hicks* case, this Court implicitly recognized that there were two components to the "cause" requirement, for in holding that the requisite cause existed, we focused both upon the cause for the trial not going forward on the assigned date (the absence of the defendant) and the relatively short period of delay needed before the case could be tried (the following month). 285 Md. at 318–319, 403 A.2d 356. Under statutes or rules similar to § 591 and Rule 746, courts have recognized that the length of the delay is a factor in the determination of the requisite cause. *See, e.g., State v. Goff,* 244 N.W.2d 579, 582 (Iowa 1976); *State v. Hines,* 225 N.W.2d 156, 158 (Iowa 1975); *People v. Hendershot,* 357 Mich. 300, 303–304, 98 N.W.2d 568 (1959); *City of Cleveland v. Austin,* 55 Ohio App.2d 215, 380 N.E.2d 1357, 1367 (1978). *See also King v. State,* 303 So.2d 389, 391 (Fla.App.1974), *cert. denied,* 314 So.2d 775 (Fla.1975).

asserted violation of § 591 and Rule 746, to re-examine the administrative judge's finding of "good cause." For the reasons set forth below, we essentially agree with the State's position on this issue.

 As a general principle, one judge of a trial court ruling on a matter is not bound by the prior ruling in the same case by another judge of the court; the second judge, in his discretion, may ordinarily consider the matter de novo. *See Waugh v. State,* 275 Md. 22, 35, 338 A.2d 268 (1975); *Foreman v. State,* 182 Md. 415, 418, 35 A.2d 171 (1943); *Insurance Company v. Thrall,* 181 Md. 19, 22–23, 27 A.2d 353 (1942); *Robinson, et al. v. Commissioners of Harford County,* 12 Md. 132, 141–142 (1858); *Placido v. Citizens Bank & Tr. Co.,* 38 Md.App. 33, 45–46, 379 A.2d 773 (1977); *Driver v. Parke-Davis & Co.,* 29 Md.App. 354, 361–364, 348 A.2d 38 (1975); *cert. denied,* 277 Md. 736–737 (1976), and cases there reviewed. This general principle, however, is inapplicable if a statute or rule reflects a different intent in a particular situation. *See Insurance Company v. Thrall, supra,* 181 Md. at 23, 27 A.2d 353; *Layman v. State,* 14 Md.App. 215, 230, 286 A.2d 559 (1972). Section 591 and Rule 746 reflect a different intent.

 Section 591, although amended occasionally in other respects, has consistently, since its initial enactment in 1971, required that the postponement of the trial date in a circuit court criminal case be done by or approved by "the administrative judge of the court." Rule 746 implements this provision by specifying that, "for good cause shown," only "the county administrative judge or a judge designated by him may grant a change of trial date." When a trial is postponed beyond the 180-day period, the failure of the administrative judge or his designee to grant or approve such postponement is a violation of § 591 and Rule 746. *Goins v. State, supra.*[20] As pointed out by Judge Powers for

---

**20.** In fact, if a case is not tried within the 180-day deadline, and if there was no order by or approved by the administrative judge

the Court of Special Appeals in *Guarnera v. State,* 20 Md.App. 562, 573, 318 A.2d 243, *cert. denied,* 272 Md. 742 (1974), quoted by us with approval in *Hicks,* 285 Md. at 317, 403 A.2d 356, "the Legislature . . . has denied all judges but the administrative head of the court authority to exercise . . . [the postponement] power." Judge Powers explained, 20 Md.App. at 572–573, 318 A.2d 243:

> "First, we must understand whose exercise of discretion is being reviewed. Not the discretion of [the trial judge] for Code, Art. 27, § 591 took away his power to postpone the trial date of a criminal case. The rule we stated in *Jennings v. State,* 8 Md.App. 321, 259 A.2d 547 (1969) when we said that 'The granting or denial of a continuance is within the sound discretion of the trial court' was modified by § 591, which vested the exclusive power to postpone the trial date of a criminal case in the administrative judge of the court."

In *Hughes v. State,* 288 Md. 216, 229, 421 A.2d 69 (1980), Judge Smith for this Court pointed out that, under § 591 and Rule 746, it is the administrative judge who exercises the discretion to postpone a case and whose determination is reviewable only for abuse of discretion.

Consequently, with regard to the postponement of a criminal trial for good cause, it is the administrative judge's exercise of judgment with which those later reviewing the matter are concerned. Another nisi prius judge, ruling on a motion to dismiss for an alleged violation of § 591 and Rule 746, has been deprived of the authority to exercise independent judgment concerning good cause for postponement.

■ Although § 591 and Rule 746 transfer the authority to postpone a criminal trial from any trial judge to the administrative judge or his designee, the statute and rule do not purport to change the standards for reviewing the

---

having the effect of postponing the trial past the deadline, a motion to dismiss for a violation of § 591 and Rule 746 must ordinarily be granted even if there may have been good cause for such a postponement. *See Goins,* 293 Md. at 106, 109–112, 442 A.2d 550.

decision on a postponement application. The determination that there was or was not good cause for the postponement of a criminal trial has traditionally been viewed as a discretionary matter, rarely subject to reversal upon review.[21] As Chief Judge Brune stated for the Court in *Schroder v. State,* 206 Md. 261, 265, 111 A.2d 587 (1955):

> "It has long been a well settled rule in this State that the granting or refusing of a continuance is within the sound discretion of the trial court and will not be set aside on appeal unless the exercise of that discretion has been arbitrary."

Earlier, this Court dismissed an appeal from several criminal convictions where the only claim of error was that the trial judge had erroneously ruled on a request for a postponement, saying (*Harris v. State,* 141 Md. 526, 530, 119 A. 154 (1922):

> "But the established rule in this State, supported by an unbroken line of decisions, is that an application for a continuance of a case is addressed to the sound discretion of the trial court, and unless that discretion is exercised arbitrarily, the action of the court on such an application *is not subject to review or appeal. 2 Poe, Pl. & Pr.* sec. 178; *Cumberland Coal & Iron Co. v. McKaig,* 27 Md. 258; *Dean v. Turner, supra* [31 Md. 52]; *Miller v. Miller,* 41 Md. 623; *Universal Life Ins. Co. v. Bachus,* 51 Md. [28] 32;

---

21. *See, e.g., Johnson v. State,* 237 Md. 283, 288, 206 A.2d 138 (1965); *McKenzie v. State,* 236 Md. 597, 601, 204 A.2d 678 (1964); *Bryant v. State,* 232 Md. 20, 21, 191 A.2d 566 (1963); *Mazer v. State,* 231 Md. 40, 46, 188 A.2d 552 (1963); *Lewis v. State,* 228 Md. 600, 603–604, 180 A.2d 839 (1962); *Harmon v. State,* 227 Md. 602, 605, 177 A.2d 902 (1962); *Taylor v. State,* 226 Md. 561, 565, 174 A.2d 573 (1961); *Peddersen v. State,* 223 Md. 329, 337–338, 164 A.2d 539 (1960); *Goldstein v. State,* 220 Md. 39, 46, 150 A.2d 900 (1959); *Stansbury v. State,* 218 Md. 255, 262, 146 A.2d 17 (1958); *Jackson v. State,* 214 Md. 454, 459, 135 A.2d 638 (1957), *cert. denied,* 356 U.S. 940, 78 S.Ct. 784, 2 L.Ed.2d 816 (1958); *Laque v. State,* 207 Md. 242, 254–255, 113 A.2d 893, *cert. denied,* 350 U.S. 863, 76 S.Ct. 105, 100 L.Ed. 765 (1955); *Schroder v. State,* 206 Md. 261, 265, 111 A.2d 587 (1955); *Hunter v. State,* 193 Md. 596, 600, 69 A.2d 505 (1949).

*Hopkins v. State, use of Gonso,* 53 Md. [502] 517; *Mead v. Tydings,* 133 Md. 608 [105 A. 863]." (Emphasis added.) *See also Millstein v. Yost,* 197 Md. 348, 350, 79 A.2d 149 (1951) (also stating that, in the absence of "arbitrary exercise of its discretion," the trial court's decision on a postponement motion "is not subject to review on appeal to this Court.").

■ Several cases have indicated that a ruling on a postponement request will be overturned only if there was both an abuse of discretion and a showing of actual prejudice because of the ruling. *Peddersen v. State,* 223 Md. 329, 337–338, 164 A.2d 539 (1960); *Stansbury v. State,* 218 Md. 255, 262, 146 A.2d 17 (1958); *Jackson v. State,* 214 Md. 454, 459, 135 A.2d 638 (1957), *cert. denied,* 356 U.S. 940, 78 S.Ct. 784, 2 L.Ed.2d 816 (1958); *Plank v. Summers,* 205 Md. 598, 605, 109 A.2d 914 (1954). *Plank v. Summers* also suggests that only in "exceptional situations" will a ruling on a postponement motion be overturned. *Ibid.* And in *Hunter v. State,* 193 Md. 596, 600, 69 A.2d 505 (1949), Chief Judge Marbury for the Court set forth the standard of review as follows:

"There is no question that the granting or refusal of a motion for a continuance or for fixing the date for a trial rests within the sound discretion of the trial court, and will not be disturbed except for arbitrary action or *clear* abuse of judicial discretion." (Emphasis added.)

Finally, the party challenging the discretionary ruling on a motion for a postponement has the burden of demonstrating a clear abuse of discretion. *Hughes v. State, supra,* 288 Md. at 229, 421 A.2d 69; *Jackson v. State, supra,* 214 Md. at 459, 135 A.2d 638.

As previously mentioned, neither § 591 nor Rule 746, as presently written, reflect an intent to change the established Maryland law concerning the review of a discretionary decision on the postponement of a criminal trial. While the discretionary authority over postponement is transferred from any trial judge to the administrative judge or his

designee, nothing in the language of the statute or rule authorizes a broader scope of review of the discretionary decision. Thus, when a criminal trial has been postponed beyond the 180-day period as a result of an order by the administrative judge, and when another judge is entertaining a motion to dismiss under § 591 and Rule 746, the latter's review of the "good cause" finding is subject to the limitations imposed by the above cases.

There is another reason why the judgment of the administrative judge, concerning the need for a postponement and the rescheduling of a criminal case, should be accorded the greatest weight. As the above-cited cases illustrate, long before the enactment of § 591 and Rule 746, the law required that there be good cause for the postponement of a trial. *See,* in addition, *Marsh v. Johns,* 49 Md. 569, 571 (1878) ("No trial should be postponed unless there is some legal ground shown, or the Court is satisfied that justice requires a postponement"); 3 WHARTON'S CRIMINAL PROCEDURE § 423, at 161 (12th ed. 1975). The essential changes in the law effected by § 591 and Rule 746, as presently written and as construed in *Hicks* and *Goins,* are the provision for the 180-day deadline and the requirement that only the administrative judge can postpone a trial beyond that deadline. The major safeguard contemplated by the statute and rule, for assuring that criminal trials are not needlessly postponed beyond the 180-day period, is the requirement that the administrative judge or his designee, rather than any judge, order the postponement. This is a logical safeguard, as it is the administrative judge who has an overall view of the court's business, who is responsible "for the administration of the court," [22] who assigns trial judges,[23] who "supervise[s] the assignment of actions for trial," [24] who supervises the court personnel involved in the

---

22. Maryland Rule 1200 c and d.

23. Rule 1202 b and c.

24. Rule 1211.

assignment of cases, and who receives reports from such personnel.

Consequently, the administrative judge is ordinarily in a much better position than another judge of the trial court, or an appellate court, to make the judgment as to whether good cause for the postponement of a criminal case exists. Moreover, with regard to the extent of a postponement, even though the administrative judge may not personally select or approve the new trial date in a postponed case, such selection is made by personnel operating under his supervision and reporting to him. When he postpones a case, he is generally aware of the state of the docket in the future, the number of cases set for trial, and the normal time it will likely take before the case can be tried.

This is not to say that a trial judge has no role when there is a motion to dismiss based upon an asserted violation of § 591 and Rule 746. As the *Hicks* and *Goins* cases make clear, a trial judge entertaining such a motion must ordinarily grant it if the case was not tried within 180 days and if the trial was not postponed beyond that deadline in accordance with the statute and rule. But in making this determination, when reviewing a postponement beyond the 180-day deadline ordered by the administrative judge, deference must be accorded the judgment of the administrative judge and those assignment personnel acting under his supervision. We hold, therefore, as follows: with regard to both components of the "good cause" requirement in § 591 and Rule 746, the trial judge (as well as an appellate court) shall not find an absence of good cause unless the defendant meets the burden of demonstrating either a clear abuse of discretion or a lack of good cause as a matter of law.

## V.

Turning to the critical postponement orders in the cases at bar, we are unable to conclude that there was a clear abuse of discretion or an error of law.

A.

As previously indicated, the defendants' principal contention is that, "as a matter of law," there is an absence of good cause when postponements are due to "an overcrowded docket." This argument relates to the orders of December 14, 1981, and January 6, 1982, in the *Frazier* and *Shaw* cases, as well as the length of the delays from the critical postponement orders to the new trial dates in all four cases.[25]

In some jurisdictions having statutes or rules similar to § 591 and Rule 746, courts have indicated that, whereas chronic court congestion is ordinarily not regarded as good cause for postponement, nonchronic congestion does not preclude a finding of good cause. The Supreme Court of Iowa has stated very recently (*State v. Bond,* 340 N.W.2d 276 (Iowa 1983)):

"When the State contends 'court congestion' is the reason for delay, the trial court must distinguish between chronic court congestion and specific circumstances arising out of unique, non-recurring events which create a particular scheduling problem. *Compare State v. Leonard,* 240 N.W.2d 690, 692–93 (Iowa 1976) (complexity of case and general docket congestion not good cause for continuance), and *State v. Hines,* 225 N.W.2d 156, 158–59 (Iowa 1975) (failure to staff courtroom with sufficient jurors not good cause for continuance), *with State v. Jennings,* 195 N.W.2d [351] at 355–56 [ (Iowa 1972) ] (illness and vacation of several judges and early rescheduling of trial of defendant out on bond constituted good cause). *Cf. State v. Hathaway,* 257 N.W.2d 735, 736–37 (Iowa 1977) (good cause for late filing of trial information established because all judges out of town on required filing day)."

*See Garrison v. State,* 270 Ark. 426, 605 S.W.2d 467, 468–469 (App.1980); *People v. Johnson,* 26 Cal.3d 557, 570–572, 162 Cal.Rptr. 431, 606 P.2d 738 (1980); *Carr v. District Court In*

---

**25.** These delays were slightly under three months in *Weems and Patton,* slightly over three months in *Frazier* and *Shaw,* and almost four months in *Richardson.*

& For Eighth Judicial Dist., 190 Colo. 125, 543 P.2d 1253 (1975); State ex rel. Leon v. Baker, 238 So.2d 281, 283 (Fla.1970); State v. Goff, 244 N.W.2d 579, 582 (Iowa 1976); State v. Hines, 225 N.W.2d 156, 158 (Iowa 1975); People v. Schinzel, 97 Mich.App. 508, 296 N.W.2d 85, 86–87 (1980); People v. Forrest, 72 Mich.App. 266, 249 N.W.2d 384, 387– 388 (1976); State v. Mack, 89 Wash.2d 788, 576 P.2d 44, 47 (1978). See also State v. Alvarez, 189 Neb. 281, 289–290, 202 N.W.2d 604 (1972).

The basis for the distinction may relate to the purpose of the speedy trial rules or statutes. In states where the purpose is not only to protect the defendant's constitutional right to a speedy trial but, like § 591 and Rule 746, to further society's interest in the prompt disposition of criminal trials [26] by providing an impetus to remedy court conges-

---

**26.** Note, *Speedy Trials: Recent Developments Concerning a Vital Right,* 4 Ford.Urb.L.J. 351, 353 (1975–1976) explains this interest as follows (footnotes omitted):

"A defendant in a criminal case can achieve definite advantages through delay. Once trial starts, stale cases are more easily challenged by defense attorneys on cross examination. Juries are often disenchanted with offenses that have occurred in the remote past. If prosecution witnesses become unavailable over long periods of time or prosecutorial ardor should wane, the guilty benefit at society's expense.

"Aside from affecting the probabilities of obtaining a conviction, the speedy trial right has significant impacts upon the quality of judicial action and the possibilities of future criminal conduct. The tendency to postpone trials adds to court congestion and the backlog of cases. To dispose of such backlog, plea bargaining is frequently utilized. In the interest of expediting matters accused persons receive lighter sentences than those they actually may have deserved. A second impact of delay is to weaken the deterrent effect that the criminal justice system should have on would-be criminals.

"Finally, the speedy trial right is intricately related to the needs of a well ordered society in several other respects. Guilty persons released on bail for too long tend to commit other crimes or flee the jurisdiction of the courts altogether. Defendants who are not bailed must spend 'dead' time in local jails exposed to conditions destructive of human character. For those who are eventually found innocent, their potential to be contributing members of society through any kind of employment is lost during pre-trial incarceration. On the other hand, the possibility of rehabilitating

tion, some courts have found court congestion to constitute good cause for delay where either the courts or the legislature have acted to remedy the congestion. *See, e.g., People v. Schinzel, supra,* 296 N.W.2d at 86–87; *State v. Alvarez, supra,* 189 Neb. at 289–290, 202 N.W.2d 604. *Cf. People v. Johnson, supra,* 26 Cal.3d at 570, 162 Cal.Rptr. 431, 606 P.2d 738 (delay due to improper court administration is not good cause); *State v. Herrera,* 63 Haw. 405, 629 P.2d 626 (1981) (court detailed means by which trial court had sought to absorb excess criminal cases); *Castle v. State,* 237 Ind. 83, 143 N.E.2d 570, 572 (1957) (trial court failed in its duty to "ensure efficient administration of justice"); *State v. Mack, supra,* 576 P.2d at 47 (inefficient procedures, *inter alia,* preclude finding of good cause). *See also State v. Rogers,* 402 So.2d 50 (Fla.App.1981) (riots constitute circumstances warranting delay); *State v. Lord,* 63 Haw. 270, 625 P.2d 1038 (1981) (an unusually large number of indictments constitutes a circumstance justifying postponement).

The defendants' argument, that overcrowded dockets cannot as a matter of law constitute good cause for the postponement of a criminal case, is illogical. When overcrowded dockets are due in part to shortages of judges, prosecuting attorneys, public defenders, supporting personnel, or facilities, it must be remembered that public resources are not unlimited and there are many competing demands upon public funds. Moreover, even if there were no deficiencies in the number of judges, prosecutors, public defenders, etc., overcrowded docket situations are sometimes inescapable. As earlier explained, the nature of any reasonable scheduling system and the inherent lack of certainty concerning the number of cases which will be fully tried or the length of trials, will on occasions lead to overcrowded dockets.

---

those who are eventually found guilty is diminished since correction procedures cannot be started until after trial. These non-productive conditions are achieved at a great financial expense to society."

The Circuit Court for Baltimore City has implemented a thorough and entirely reasonable system for the scheduling of criminal cases. It has been a successful system. The average disposition time for a criminal case is 139 days after filing. Karwacki, *Countdown To Supreme Bench Consolidation, supra,* at 6. The average time from arraignment or the first appearance of counsel would be less. Moreover, the proportion of criminal cases which must be postponed by the administrative judge beyond the 180-day deadline, and in which the defendant did not seek or expressly consent to such postponement, is less than two percent. The Circuit Court for Baltimore City is not "chronically congested." To the extent that there are overcrowded docket situations, the court has devised a workable system to deal with them. The situation in Baltimore City thus differs greatly from that involved in *State v. Mack, supra,* 576 P.2d at 47, which led the Supreme Court of Washington to comment:

"Insofar as the record is concerned, neither court appears to have attempted to modify the current procedure or to adopt a more efficient one. . . . Self-created hardship is not an excuse for violating mandatory rules.

From 1971 until 1980, when § 591 and later Rule 746 required "extraordinary cause" for the postponement of a criminal case, it was arguable that, as a matter of law, overcrowded dockets did not constitute sufficient cause for a postponement. In its 1980 legislative session, however, the General Assembly re-examined § 591 and Rule 746 in light of this Court's decision in *Hicks.* Various bills were introduced at that session to change the statute and the rule. For example, one bill would have removed felony cases from the operation of § 591 and Rule 746, expressly providing that a felony case could not be dismissed if the trial date exceeded the statutory deadline.[27] Another bill would have changed the word "shall" in § 591 to "may."[28] A different

---

**27.** House Bill No. 324.

**28.** House Bill No. 219.

bill expressly stated that the provisions of § 591(a) "are directory only and not mandatory," and would have added a new section to § 591 embodying four factors to be considered in determining whether the accused was denied a speedy trial.[29] Another bill would have provided that the postponement of a criminal case beyond the deadline "may not be the sole reason for dismissal but may be a factor to be considered by the judge in determining whether the accused has been denied a speedy trial." [30] Finally, it was proposed that the "extraordinary cause" standard in § 591 be changed to "cause" or to "good cause." [31] Different groups advocated one or another of these proposals. For example, both the Maryland Chiefs of Police Association and the Baltimore City Police Department recommended "making time frames for prosecution in criminal cases directory as expressed in [several] bills, rather than mandatory." [32]

All of these proposals were rejected by the General Assembly except for the one changing "extraordinary cause" to "good cause." Ch. 378 of the Acts of 1980. Consequently, while the Legislature chose to retain the scope and mandatory nature of § 591 and Rule 746, it also clearly intended to expand those circumstances furnishing the requisite cause for postponing a trial date beyond 180 days.

The testimony before the House Judiciary Committee by a sponsor of one of the proposals to change "extraordinary cause" to "good cause" is instructive. Delegate Pica, after reviewing the *Hicks* decision, testified as follows (testimony before the House Judiciary Committee, February 12, 1980,

---

**29.** House Bill No. 351.

**30.** House Bill No. 614.

**31.** House Bill No. 615 would have substituted "good cause" for "extraordinary cause." House Bill No. 205, as introduced, would have merely deleted the word "extraordinary." It was later amended to add the adjective "good" before "cause."

**32.** Letter of January 29, 1980, from the Counsel, Maryland Chiefs of Police Association, to the Chairman of the House Judiciary Committee, contained in the file of the Department of Legislative reference.

contained in the file of the Department of Legislative reference):

"What we are really doing here is attempting to amend the law in order to *offer the courts some leeway in the disposition of an extremely heavy case load. According to some estimates, the number of criminal cases in Baltimore City alone has increased 50% in the last few years. The strain on the courts and the strain on the prosecution is rising sharply.*

Sec. 591 of Art. 27 illustrates the legislative intent that a defendant be brought to trial within six months of his arraignment. Rule 746 further narrowed that period to 120 days. Subsequent to the *Hicks* case, and fearful of its effects, the Maryland Court of Appeals enacted an emergency amendment to Rule 746 changing the 120 day period to 180 days." (Emphasis added.)

The witness then discussed the "extraordinary cause" requirement of § 591 and Rule 746 "which is really the culprit here." He continued:

"It is the culprit because it confines the judgment of the court to postponing only those cases where extraordinary cause is shown to change the trial date. *The growth of the number of cases being brought into criminal court has dramatically increased, resulting in crowded and backlogged court dockets.* The *Hicks* decision suggests that a defendant's confinement out of state may be extraordinary cause *but that crowded court dockets may not. Hicks'* holding has created fear among prosecutors and judges alike.

"Though the Court of Appeals, in a timely decision to prevent that possibility, enacted an emergency measure to amend the time limit to a 180 day period, I believe it is now time for the Legislature to focus on providing the courts with the tools it needs to operate efficiently and constitutionally in a judicial environment wholly dependent upon the level of the case load.

"I have introduced three bills that I offer this Committee for deliberation:

＊　　＊　　＊　　＊　　＊　　＊

"The third, and perhaps best alternative, H.B. 615, allows a court to do what they do best—to consider all the circumstances and grant delay of the trial based upon the facts of the case, and without harm or prejudice to the defendant. The bill accomplishes this result by removing the extraordinary cause requirements for a postponement and replacing it with the requirement of showing 'good cause' for a change in trial date.

"H.B. 615 maintains the original scope of Rule 746 in requiring that defendant be brought to trial within 180 days, a guideline that should be met unless good cause for not doing so is exhibited by one of the parties. The good cause requirement unbinds the hands of the Judiciary in having to choose between the dismissal of a case because it did not fall within the 180 day period, and the more rational choice of allowing the case to go forth upon a showing that good cause existed for its not being set within that period.

"With our prosecutors' pressure to deal daily *with hundreds of new cases, and our courts burdened by a jamfilled docket, the necessity of granting to the courts the language they need to operate effectively in light of the Hicks decision becomes imperative.*" (Emphasis added.) The House Judiciary Committee went on to report favorably upon the proposal to change "extraordinary cause" to "good cause," and the General Assembly enacted that proposal. This change, particularly in light of the testimony before the Committee, clearly indicated a legislative intent that crowded court dockets may constitute sufficient cause for trying a case beyond the 180-day deadline.

 We therefore reject the defendants' argument that, as a matter of law, an overcrowded docket situation cannot justify either a change of trial date or the length of the delay until the new trial date. When the administrative

judge or his designee postpones a case beyond the 180-day deadline because of court unavailability, there is a violation of § 591 and Rule 746 only if it is demonstrated that the change of trial date, or the period of time until a new trial date, represented a clear abuse of discretion.

No such abuse of discretion was shown in the present cases. There is nothing in these records indicating that the administrative judge was not warranted in postponing the *Frazier* case on December 14, 1981, and the *Shaw* case on January 6, 1982, because of the unavailability of a court and the number of cases on the move list. Moreover, there was no showing in any of the four cases that the lengths of the delays following the critical postponements represented a clear abuse of discretion by the administrative judge and/or the assignment personnel acting under his supervision. As far as the records show, the first available new dates for trials were assigned. There may arise cases in which the inordinate length of time until the new trial date will itself be prima facie evidence of undue delay, shifting the burden to the State to show justification. In our view, however, none of the cases at bar fall into this category.

B.

The changes of the November 5, 1981, trial date in the *Weems and Patton* case and the January 7, 1982, trial date in the *Richardson* case, were not because of overcrowded dockets. Nevertheless, we do not believe that Judge Karwacki clearly abused his discretion in ordering either postponement.

The *Weems and Patton* case obviously could not be tried on the November 5, 1981, trial date because of the absence of the defendants, the witnesses and one of the defense counsel. *See Hicks,* 285 Md. at 319, 403 A.2d 356. That this inability was due to the courtroom clerk's mistake on October 14, 1981, in not assuring that the postponement form was filled out and transmitted to the Assignment Office, did not preclude Judge Karwacki from finding good

cause for a postponement. In the finest assignment system, mistakes will sometimes be made. There is no indication that the mistake made here was anything but an isolated instance or that the postponement form procedure in the Circuit Court for Baltimore City fails to operate efficiently. An occasional human error by court personnel, leading to circumstances which prevent a case from being tried, does not represent the type of chronic delay which § 591 and Rule 746 were designed to prevent.

■ The January 7, 1982, postponement in the *Richardson* case was similar. The absence of the defendant on the January 7th trial date necessitated a postponement. That this absence was caused by the Division of Correction's failure to identify in time which of three Mark Richardsons was the defendant, does not compel the conclusion that the postponement was unsupported by good cause. What happened also appears to have been an isolated instance rather than a recurring problem leading to chronic trial delays.

## C.

The 180-day deadline set forth in § 591 and Rule 746 is not absolute. As we stated in *Goins*, 293 Md. at 112, 442 A.2d 550, the statute and rule contain their own mechanism for postponing a case beyond the 180-day limit, which is an order, based on a finding of good cause, by the administrative judge. In these cases, as in *Goins*, "the mechanism of the statute and rule was followed."

The motions to dismiss in all four cases, insofar as they were grounded upon § 591 and Rule 746, should have been denied. As previously mentioned, however, there were other pre-trial motions and constitutional speedy trial arguments which were not considered by the trial judges and must be decided upon remand.[33]

---

**33.** In this connection, we emphasize that our holdings in this opinion relate solely to § 591 and Rule 746 and have no application to the federal and state constitutional rights to a speedy trial. The applicable speedy trial principles are set forth in cases such as *Brady v.*

JUDGMENTS OF THE CRIMINAL COURT OF BALTI-
MORE (NOW THE CIRCUIT COURT FOR BALTIMORE
CITY) REVERSED, AND CASES REMANDED TO THAT
COURT FOR FURTHER PROCEEDINGS NOT INCON-
SISTENT WITH THIS OPINION. RESPONDENTS TO
PAY COSTS.

COLE, J., concurs in the result.

DAVIDSON, Judge, dissenting:

# I

## Introduction

The majority here determines that the five defendants in
the four criminal cases decided in this appeal did not demon-
strate that there was either an "abuse of discretion or a lack
of good cause as a matter of law" when their respective
cases were postponed and rescheduled for trial on dates
beyond the 180-day period prescribed by Maryland Code
(1957, 1982 Repl.Vol., 1983 Cum.Supp.), Art. 27, § 591,[1] and

---

State, 291 Md. 261, 434 A.2d 574 (1981); Brady v. State, 288 Md. 61,
65, 415 A.2d 1126 (1980); Wilson v. State, 281 Md. 640, 644, 382 A.2d
1053, cert. denied, 439 U.S. 839, 99 S.Ct. 126, 58 L.Ed.2d 136 (1978);
Jones v. State, 279 Md. 1, 6, 367 A.2d 1 (1976), cert. denied, 431 U.S.
915, 97 S.Ct. 2177, 53 L.Ed.2d 225 (1977); Erbe v. State, 276 Md. 541,
546–47, 350 A.2d 640 (1976); Smith v. State, 276 Md. 521, 527–28,
350 A.2d 628 (1976); and Epps v. State, 276 Md. 96, 104–09, 345 A.2d
62 (1975).

1. Art. 27, § 591 provides in pertinent part:
"(a) Within two weeks after the arraignment of a person accused
of a criminal offense, or within two weeks after the filing of an
appearance of counsel or the appointment of counsel for an accused
in any criminal matter, whichever shall occur first, a judge or other
designated official of the circuit court in which the matter is pending,
shall set a date for the trial of the case, which date shall be not later
than 180 days from the date of the arraignment of the person
accused or the appearance or the appointment of counsel for the
accused whichever occurs first. The date established for the trial of
the matter shall not be postponed except for good cause shown by
the moving party and only with the permission of the administrative
judge of the court where the matter is pending." (Emphasis added.)

Maryland Rule 746.[2] Consequently, the majority holds that the motions to dismiss in each of the four cases should have been denied. I do not agree. Accordingly, I respectfully dissent.

## II

### *State v. Frazier* and *State v. Shaw*

The majority in *Frazier* and *Shaw* determines that "[w]hen the administrative judge or his designee postpones a case beyond the 180-day deadline because of court unavailability, there is a violation of § 591 and Rule 746 only if it is demonstrated that the change of trial date, or the period of time until a new trial date, represented a clear abuse of discretion." It concludes that "[n]o such abuse of discretion was shown in the present cases."

In my view, court unavailability can, under certain circumstances, constitute good cause for postponement of a criminal case beyond the 180-day period prescribed by Art. 27, § 591 and Md.Rule 746. Unavailability of a court resulting from "chronic court congestion," in and of itself, ordinarily does not constitute good cause; whereas unavailability of a court resulting from "nonchronic court congestion" ordinarily constitutes good cause. Because, in my view, in *Frazier* and *Shaw* the unavailability of a court resulted from "chronic court congestion," there was no good cause for postponement. Therefore, I, unlike my colleagues, find that an abuse of discretion was shown in these cases.

---

2. Md.Rule 746 provides:

"a. General Provision.

"Within 30 days after the earlier of the appearance of counsel or the first appearance of the defendant before the court pursuant to Rule 723, a trial date shall be set which shall be not later than 180 days after the appearance or waiver of counsel or after the appearance of defendant before the court pursuant to Rule 723.

"b. Change of Trial Date.

"Upon motion of a party made in writing or in open court and for good cause shown, the county administrative judge or a judge designated by him may grant a change of trial date."

The terms "chronic court congestion" and "nonchronic court congestion" are derived from the ABA, Standards for Criminal Justice, Speedy Trial (1980), and its accompanying Commentary. Standard 12–2.3 provides in pertinent part:

"The following periods should be excluded in computing the time for trial:

. . . . .

"(b) the period of delay resulting from congestion of the trial docket when the congestion is attributable to exceptional circumstances...."

The Commentary to ABA, Speedy Trial Standard 12–2.3(b) at 28–29 provides in pertinent part:

"Although it is appropriate to allow added time under certain exceptional circumstances, such as those that result in the unavailability of the prosecutor or the judge at the time the trial is scheduled, delay arising out of the chronic congestion of the trial docket should not be excused.... Under the Supreme Court balancing test, docket congestion may be considered.

. . . . .

"Although it is fair to expect the state to provide the machinery needed to dispose of the usual business of the courts promptly, it does not appear feasible to impose the same requirements when certain unique, nonrecurring events have produced an inordinate number of cases for court disposition. Thus, when a large-scale riot or other mass public disorder has occurred, some leeway for additional time is required to ensure that the many resulting cases will receive adequate attention from the prosecutor's office, defense counsel (possibly a single defender office), and the judiciary." (Footnotes omitted).

Thus, although the term "exceptional circumstances" has not been expressly defined, the Commentary describes "exceptional circumstances" as congestion arising from unique, nonrecurring events that create a particular scheduling problem or produce an inordinate number of cases for court disposition. Events such as the illness or death of a prosecu-

tor, defense counsel or judge on the day a trial is scheduled, or riots or other public disturbances are illustrative of such unique, nonrecurring events.

Courts in some jurisdictions having statutes or rules similar to Art. 27, § 591 and Md.Rule 746 that have considered the circumstances in which court congestion constitutes the requisite cause for postponement have determined, as stated by the majority, that "chronic court congestion is ordinarily not regarded as good cause for postponement, [but] nonchronic congestion does not preclude a finding of good cause." [3] Illustrative is the case of *People v. Forrest,* 72 Mich.App. 266, 273, 249 N.W.2d 384, 388 (1976), where the Court of Appeals of Michigan said:

> "In the case at bar the people have not made an affirmative showing of unavoidable delays which might justify this inaction. A mere recitation of the factor of a crowded docket, without more, cannot warrant visiting on the incarcerated defendant a longer imprisonment than might otherwise be in store. If congestion and delay result from inadequate court staffing or funding, the inevitable results of those delays must fall upon the people, who have the power to remedy court congestion."

The rationale underlying the view that "chronic court congestion" does not ordinarily constitute good cause was expressed in the Commentary to ABA, Speedy Trial Standard 12–2.3(b) at 29 as follows:

---

**3.** *E.g., Garrison v. State,* 270 Ark. 426, 605 S.W.2d 467, 469 (App. 1980); *People v. Johnson,* 26 Cal.3d 557, 571, 606 P.2d 738, 747, 162 Cal.Rptr. 431, 440 (1980); *Arreola v. Municipal Court of Ventura County,* 139 Cal.App.3d 108, 114, 188 Cal.Rptr. 529, 532 (1983); *State v. Lord,* 63 Hawaii 270, 272, 625 P.2d 1038, 1039 (1981); *State v. Bond,* 340 N.W.2d 276, 279 (Iowa 1983); *State v. Hines,* 225 N.W.2d 156, 158 (Iowa 1975); *People v. Schinzel,* 97 Mich.App. 508, 511–12, 296 N.W.2d 85, 86 (1980); *State v. Alvarez,* 189 Neb. 281, 289, 202 N.W.2d 604, 609 (1972); *Ordunez v. Bean,* 579 S.W.2d 911, 913 (Tex.Cr.App.1979); *State v. Mack,* 89 Wash.2d 788, 793–94, 576 P.2d 44, 47 (1978); *see also Carr v. District Court In & For the Eighth Judicial District,* 190 Colo. 125, 126, 543 P.2d 1253, 1254 (1975).

" . . . (1) the defendant can be prejudiced by delay, whatever the source; (2) such delays are contrary to the public interest in the prompt disposition of criminal cases; (3) *if congestion excuses long delays, there is insufficient inducement for the state to remedy congestion;* and (4) the calendar problems that arise out of trying to make maximum use of existing facilities do not ordinarily require time beyond that otherwise allowed. But, while delay because of failure to provide sufficient resources to dispose of the usual number of cases within the speedy trial time limits is not excused, the standard does recognize congestion as justifying added delay when 'attributable to exceptional circumstances.' " (Emphasis added.)

Thus, it has been recognized that if "chronic court congestion" ordinarily constitutes good cause for delay, the purposes of statutory prompt trial requirements will be undermined. It is for this reason that I am persuaded that "chronic court congestion" ordinarily should not be regarded as good cause for postponement.

This conclusion is also supported by the historical development of Maryland's statutory prompt trial requirements.[4] The requirement that criminal cases be tried promptly is deeply rooted in our English law heritage. *See Klopfer v. North Carolina,* 386 U.S. 213, 223, 87 S.Ct. 988, 993, 18 L.Ed.2d 1 (1967). This requirement first appeared in the Magna Charta of 1215 and is presently embodied in the Sixth Amendment to the United States Constitution and the constitutions of almost all of the 50 states. *See, e.g.,* Md. Declaration of Rights, Art. 21. By 1960, court systems throughout the United States had become burdened by "chronic court congestion" manifested by overcrowded dockets, backlogs, and unavailability of courts, prosecutors, and defense attorneys. This "chronic court congestion" inevita-

---

4. Throughout the remainder of this opinion, the term "statutory prompt trial requirements" refers to the requirements embodied in Art. 27, § 591 and Md.Rule 746.

bly caused delay in the trial of criminal cases. As stated by the American Bar Association in 1968:

*"Congestion in the trial courts of this country, particularly in urban centers, is currently one of the major problems of judicial administration.* Notwithstanding the usual rule that criminal cases have priority over civil cases, this congestion has created serious difficulties for the administration of criminal justice. *The continued pressures upon existing resources have been such that it is extremely difficult to dispose of all criminal cases with promptness and with due regard for fair procedures.* Several approaches to this problem are possible and desirable. The most obvious, but perhaps the most difficult, is that of finding means for reducing the amount of criminal conduct, such as by attacking poverty and other crime stimuli. Another is to overcome society's reluctance to provide the necessary resources—more prosecutors, judges, courtrooms, and court personnel—for prompt processing of all cases reaching the courts. *Still other approaches involve the structuring of improvements in criminal procedure, particularly by advancing the efficiency of the process while at the same time ensuring its fairness and effectiveness."* ABA Project on Minimum Standards for Criminal Justice, Standards Relating to Speedy Trial at 1 (Approved Draft 1968) (emphasis added).

Recognizing that "chronic court congestion" inevitably causes delay in the trial of criminal cases, Maryland, like many other states, adopted the approach of enacting statutes and promulgating court rules requiring that criminal trials be held within a prescribed period of time. *See* Note, *The Right to a Speedy Criminal Trial,* 57 Colum.L.Rev. 846, 847 (1957). By ch. 212 of the Acts of 1971, the General Assembly declared a "legislative policy designed to obtain prompt disposition of criminal charges...." *State v. Hicks,* 285 Md. 310, 316, 403 A.2d 356, 359, on motion for reconsideration, 285 Md. 334, 403 A.2d 368 (1979). That act required that all criminal cases be tried within six months unless the trial was postponed for "extraordinary cause." These re-

quirements were subsequently embodied in former Md.Rule 740, effective 1 June 1972. Nevertheless, because these requirements were held to be "directory," not mandatory, *Young v. State,* 15 Md.App. 707, 292 A.2d 137, *summarily aff'd,* 266 Md. 438, 294 A.2d 467 (1972), the legislative policy, designed to obtain the prompt disposition of criminal charges, was "largely unheeded" and, therefore, not implemented. *Hicks,* 285 Md. at 317, 403 A.2d at 360.

In 1977, this Court promulgated Md.Rule 746 which required that all criminal cases be tried within 120 days unless the trial was postponed for "extraordinary cause." Subsequently, in *Hicks,* 285 Md. at 334–35, 403 A.2d at 369, we overruled *Young.* There, we made it clear that "[t]he provisions of Rule 746 are of mandatory application, binding upon the prosecution and defense alike; they are not mere guides or bench marks to be observed, if convenient." *Hicks,* 285 Md. at 318; 403 A.2d at 360. Additionally, we made it clear that "dismissal of the criminal charges is the appropriate sanction where the State fails to bring the case to trial within the 120-day period prescribed by the rule and where 'extraordinary cause' justifying a trial postponement has not been established." *Hicks,* 285 Md. at 318, 403 A.2d at 360. We expressly stated that the dismissal sanction was "a prophylactic measure designed to insure compliance with the requirements imposed on the State regarding prompt trials of criminal cases." *Hicks,* 285 Md. at 337, 403 A.2d at 370. By employing the sanction of dismissal in all criminal cases that are not tried within the statutorily prescribed time period, unless the requisite cause is shown, this Court attempted to create an incentive for trial courts to design and implement efficient and fair procedures that would eliminate delay caused by "chronic court congestion." Thus, we "put teeth" into the requirements governing prompt trials. *Hicks,* 285 Md. at 318, 403 A.2d at 360.

Subsequently, considerable concern arose as to the practicability of the principles articulated in *Hicks.* In 1979, this Court amended Md.Rule 746 to prescribe a 180-day period, rather than a 120-day period, for the trial of all criminal

cases. By ch. 378 of the Acts of 1980, the General Assembly amended Art. 27, § 591 to prescribe a 180-day, rather than a six-month, period for the trial of all criminal cases and a "good cause" rather than an "extraordinary cause" standard for postponement.

As the majority recognizes, the legislative history of the 1980 amendment "clearly intended to expand those circumstances furnishing the requisite cause for postponing a trial date beyond 180 days." Indeed, Delegate John A. Pica, Jr., a sponsor of one of the proposals to change "extraordinary cause" to "good cause" said:

> "What we are really doing here is attempting to amend the law in order to *offer the courts some leeway* in the disposition of an extremely heavy case load.
>
> . . . . .
>
> The growth of the number of cases being brought into criminal court has dramatically increased, resulting in crowded and backlogged court dockets. The *Hicks* decision suggests that a defendant's confinement out of state may be extraordinary cause but that crowded court dockets may not.
>
> . . . . .
>
> The third, and perhaps best alternative, H.B. 615, *allows a court to do what they do best—to consider all the circumstances and grant delay of the trial based upon the facts of the case,* and without harm or prejudice to the defendant. The bill accomplishes this result by removing the extraordinary cause requirements for a postponement and replacing it with the requirement of showing 'good cause' for a change in trial date." Testimony on H.B. 351, 614 and 615 before the House Judiciary Committee, 12 February 1980.

Although Delegate Pica indicated concern that under *Hicks* "crowded court dockets may not" be regarded as "extraordinary cause," he did not, however, suggest that "chronic court congestion," in and of itself, should constitute "good cause."

I agree with the majority that the 1980 amendment "clearly indicated a legislative intent that crowded court dockets may constitute sufficient cause for trying a case beyond the 180-day deadline." In my view, however, that amendment does not show that the General Assembly intended that "chronic court congestion," in and of itself, should constitute good cause. Rather, particularly in light of Delegate Pica's testimony, that amendment shows that the General Assembly intended that the question whether court unavailability constituted good cause—whether it resulted from "chronic" or "nonchronic court congestion"—like every other question relating to "good cause," should be determined by the administrative judge's exercise of discretion based upon the facts and circumstances of each case.

Finally, the legislative history of the 1980 amendment also reveals that the General Assembly consistently rejected the notion of restricting the application of the dismissal sanction or eliminating it entirely. Thus, the General Assembly evidenced its intent that the prophylactic sanction of dismissal be retained.

The basic approach adopted by the General Assembly is clear. All criminal cases were to be tried within the statutorily prescribed time period unless postponed for good cause. The administrative judge was authorized to determine on a case-by-case basis whether court unavailability constituted good cause—whether it resulted from "chronic" or "nonchronic court congestion." The sanction of dismissal was to be retained as an incentive for trial courts to continue to implement efficient and fair procedures that would eliminate delay caused by "chronic court congestion." Manifestly, the 1980 amendment to the statutory prompt trial requirements did not alter the General Assembly's purpose of eliminating delay caused by "chronic court congestion."

In 1980, this Court amended Md.Rule 746 to conform to the statute. In 1982, in *Goins v. State,* 293 Md. 97, 442 A.2d 550 (1982), we reaffirmed the principles established in *Hicks*

that "put teeth" into the requirements governing prompt trials.

My review of the historical development and legislative history of Maryland's statutory prompt trial requirements compels me to conclude that "chronic court congestion," in and of itself, ordinarily does not constitute good cause for postponement. This conclusion is also supported by the existing interrelationship between the Sixth Amendment prompt trial requirement and the statutory prompt trial requirements. I agree with the majority that "§ 591 and Rule 746 were not intended to be codifications of the constitutional speedy trial right but stand 'on a different legal footing.'" Nevertheless, in my dissenting opinion in *Hicks* I expressed the view that the Sixth Amendment prompt trial requirement and the statutory prompt trial requirements are interrelated. There, I said:

"It is clear, therefore, that statutory prompt trial requirements are intended to, and do in fact, broaden the scope and applicability of the Sixth Amendment requirement and increase its effectiveness in reducing delay by mandating that trials be held more promptly than is required by the Sixth Amendment. Those statutory requirements implement, effectuate, and 'put teeth' into the Sixth Amendment. Given this interrelationship, it would be, in my view, incongruous to interpret a statutory requirement as being narrower in scope and applicability and, therefore, less effective than the Sixth Amendment requirement." *Hicks,* 285 Md. at 327, 403 A.2d at 365 (Davidson, J., dissenting).

I adhere to the view that the statutory prompt trial requirements were intended to implement the Sixth Amendment prompt trial requirement and to increase its effectiveness in reducing delay.[5] If this objective is to be effectuated, the

---

5. Courts in other jurisdictions have found that statutory prompt trial requirements were intended to implement the Sixth Amendment prompt trial requirement. *E.g., Stobaugh v. State,* 614 P.2d 767, 770 (Alaska 1980); *People v. Bell,* Colo., 669 P.2d 1381, 1383 (1983);

statutory prompt trial requirements must be interpreted as being broader in scope and applicability than the Sixth Amendment prompt trial requirement.

This Court has repeatedly recognized that under the Sixth Amendment prompt trial requirement the responsibility for delay caused by "chronic court congestion" manifested by overcrowded dockets, unavailability of courts, and scheduling problems rests upon the courts and, therefore, that unintentional delay caused by "chronic court congestion" is inexcusable and must be weighed against the State. *Wilson v. State,* 281 Md. 640, 652, 382 A.2d 1053, 1063, *cert. denied,* 439 U.S. 839, 99 S.Ct. 126, 58 L.Ed.2d 136 (1978); *Jones v. State,* 279 Md. 1, 12, 367 A.2d 1, 8–9 (1976), *cert. denied,* 431 U.S. 915, 97 S.Ct. 2177, 53 L.Ed.2d 225 (1977); *Smith v. State,* 276 Md. 521, 529, 531, 350 A.2d 628, 633, 634–35 (1976); *Epps v. State,* 276 Md. 96, 114–15, 345 A.2d 62, 74 (1975). Thus, in *Epps v. State,* 276 Md. at 114–15, 345 A.2d at 74 (1975), we stated:

"[A] delay in affording a criminal defendant a 'speedy trial' because of over-crowded court dockets and scheduling problems, the responsibility for which rests upon both the courts and the prosecutors, cannot be classified as wholly 'neutral' and must be included within the period of

---

*Underhill v. State,* 129 Ga.App. 65, 66, 198 S.E.2d 703, 705 (1973); *People v. Jones,* 84 Ill.2d 162, 168, 49 Ill.Dec. 287, 290, 417 N.E.2d 1301, 1304 (1981); *State v. Warren,* 224 Kan. 454, 457, 580 P.2d 1336, 1339 (1978); *State v. Driever,* 347 So.2d 1132, 1134 (La.1977); *State v. Wells,* 443 A.2d 60, 63 (Me.1982); *Commonwealth v. Fields,* 371 Mass. 274, 279, 356 N.E.2d 1211, 1215 (1976); *State v. Alvarez,* 189 Neb. 281, 291, 202 N.W.2d 604, 610 (1972); *State v. Pachay,* 64 Ohio St.2d 218, 221, 416 N.E.2d 589, 591 (1980); *Jones v. Commonwealth,* 495 Pa. 490, 499, 434 A.2d 1197, 1201 (1981); *State v. Wilmot,* R.I., 461 A.2d 401, 404 (1983); *State v. Mack,* 89 Wash.2d 788, 791–92, 576 P.2d 44, 47 (1978); *State v. Lacy,* 232 S.E.2d 519, 522 (W.Va. 1977).

In addition, the legislative history of the Federal Speedy Trial Act of 1974, 18 U.S.C.A. § 3161 (1983 Cum.Supp.), indicates that the federal statutory prompt trial requirements were intended to implement the Sixth Amendment prompt trial requirement. *See* H.R.Rep. No. 1508, 93d Cong.2d Sess., *reprinted in,* [1974] U.S.Code Cong. & Admin.News 7401–05.

delay in determining whether there has been a denial of this constitutional right."

Consequently, this Court has recognized that under the Sixth Amendment prompt trial requirement, the State has a duty to provide a prompt trial even though "chronic court congestion" exists and its failure to do so is inexcusable.

Under the statutory prompt trial requirements, the State has a duty to provide a prompt trial unless there is good cause for postponement. If "chronic court congestion" is regarded as good cause then, under the statutory prompt trial requirements, the State has a duty to provide a prompt trial unless "chronic court congestion" exists. Such an interpretation leads to the conclusion that under the statutory prompt trial requirements the State has no duty to provide a prompt trial when "chronic court congestion" exists. Thus, its failure to provide a prompt trial is, excused. Indeed, that failure not only is excused, but is itself a justification for delay. Thus, the State's failure to comply with a standard of the Sixth Amendment requirement is transformed into a justification for delay. This transformation narrows the scope and applicability of the statutory prompt trial requirements and makes them less effective in reducing delay than the Sixth Amendment requirement. Such a result is incongruous. For this reason, too, I am persuaded that "chronic court congestion" ordinarily does not constitute good cause for postponement.

The majority, without defining the term "chronic court congestion," finds that in Baltimore City "the proportion of criminal cases which must be postponed by the administrative judge beyond the 180-day deadline . . . is less than two percent" and, therefore, that "[t]he Circuit Court for Baltimore City is not 'chronically congested.'" It concludes that under these circumstances the unavailability of a court, in and of itself, constitutes good cause for postponement beyond the statutorily prescribed time period.

There is, however, nothing in the legislative history to indicate that the General Assembly intended that all crimi-

nal cases be tried within 180 days, except for two percent of the cases.[6] More important, the record shows that in both *Frazier* and *Shaw* the only reasons assigned for the postponement beyond the statutorily prescribed time period were premised upon the unavailability of a court and the number of cases on the "move list." Thus, there is nothing to show that the unavailability of a court that caused the postponement in *Frazier* and *Shaw* resulted from unique, nonrecurring events. There is nothing to show that the unavailability of a court was caused by an abrupt and unexpected increase in the number of criminal cases filed, or by a sharp and unexpected decrease in the number of available judges. Rather, the unavailability of a court here resulted from the ordinary recurrent events associated with the regular procedures utilized to handle the usual business of the Circuit Court for Baltimore City. Therefore, there was nothing to show that the unavailability of a court was caused by anything other than what I define as "chronic court congestion." Accordingly, there was nothing to show that the postponements in *Frazier* and *Shaw* were caused by anything other than "chronic court congestion." Under these circumstances, the majority's application of the principle announced in these cases, in my view, establishes that "chronic court congestion" that causes delay, in and of itself, constitutes "good cause" for delay. Such a result is untenable.

In determining that the court unavailability, resulting from "chronic court congestion" in *Frazier* and *Shaw,* in and of itself, constitutes good cause for delay, the majority has, in my view, undermined the purpose of both the General Assembly and this Court—to eliminate the delay caused by "chronic court congestion." It has obviated the necessity for the administrative judge to exercise his discretion in determining whether court congestion constitutes good cause for delay. It has impeded the right of society and the accused

---

**6.** I note that there is nothing in the record to indicate the statistical derivation of the two percent figure.

to have all criminal cases tried within 180 days, notwithstanding the existence of "chronic court congestion." In so doing, it has restricted the applicability of the dismissal sanction, thus destroying the incentive for trial courts to comply with the statutorily prescribed time period. In short, the majority has extracted the "teeth" that this Court in *Hicks* inserted into the requirements governing prompt trials of criminal cases.

Although I agree with the majority's principle that court unavailability can, under certain circumstances, constitute good cause for postponement, I do not agree with the majority's application of that principle here because it is both illogical and destructive of the purpose of the statutory prompt trial requirements. In my view, under the present circumstances, the unavailability of a court resulting from "chronic court congestion" did not constitute good cause for a postponement in either *Frazier* or *Shaw*. Consequently, there was an abuse of discretion in granting these postponements. Accordingly, I would affirm the trial courts' judgments dismissing these cases.[7]

## III

### *State v. Weems and Patton* and *State v. Richardson*

In *Weems and Patton,* the majority determines that "the courtroom clerk's mistake on October 14, 1981, in not assuring that the postponement form was filled out and transmitted to the Assignment Office," constitutes good cause for

---

**7.** Additionally, in my view, in *Frazier* the unavailability of a court did not constitute good cause for the length of the delay. At the 23 March 1982 hearing on the defendant's motion to dismiss for failure to comply with the statutory prompt trial requirements the trial court said:

> "I know my Court has been available on a number of occasions over the crucial period when this case was supposed to be tried...."

There was no reason offered to explain why, under these circumstances, the case had been scheduled for trial beyond the statutorily prescribed time period. Thus, there was nothing to justify the length of the delay.

delay because allegedly it was an "isolated instance." In *Richardson,* the majority determines that "the Division of Correction's failure to identify . . . which of three Mark Richardsons was the defendant," in time to bring him to court on the day of his trial constitutes good cause for delay because allegedly it was an "isolated instance." I do not agree.

This Court has frequently described negligence as a lack of ordinary care under all circumstances. It consists of a failure to do what a reasonably prudent person would have done under similar circumstances. *Eastern Shore Public Service Co. v. Corbett,* 227 Md. 411, 426, 177 A.2d 701, 709 (1962); *Vickers v. Starcher,* 175 Md. 522, 531, 2 A.2d 678, 682 (1938); *Geiselman v. Schmidt,* 106 Md. 580, 584, 68 A. 202, 204 (1907). Moreover, in applying the Sixth Amendment prompt trial requirement, this Court has reiterated that it is the duty of the State to bring the accused to trial, *Wilson,* 281 Md. at 642, 382 A.2d at 1055; *Jones,* 279 Md. at 7, 367 A.2d at 6; *see also Barker v. Wingo,* 407 U.S. 514, 527, 92 S.Ct. 2182, 2190, 33 L.Ed.2d 101 (1972), and that "dereliction on the part of the State's Attorney's office or the assignment office," *Smith,* 276 Md. at 530, 350 A.2d at 634, as well as the State's failure to locate a defendant, particularly one incarcerated in Maryland, constitutes a breach of that duty, *Brady v. State,* 291 Md. 261, 267, 434 A.2d 574, 577 (1981).

According to the majority, the record in *State v. Weems and Patton* shows, with respect to the 5 November 1981 trial date, that:

> "[T]he Assignment Commissioner indicated that the Assignment Office clerk attending the administrative judge's hearing on October 14, 1981, should have seen to it that the necessary data was placed on the form and delivered to the Assignment Office."

According to the majority, however, the Assignment Office clerk at the 14 October 1981 postponement hearing failed "to follow the normal procedure of filling out the standard postponement form and submitting it to the Assignment

Office." Manifestly, the Assignment Office clerk's failure to follow established procedures evidences a lack of ordinary care. Thus, this conduct constitutes negligence and is a breach of the State's duty to bring an accused to trial.

Additionally, the record in *Weems and Patton* shows, as the majority recognizes, that the supervisor in the Assignment Office who initially scheduled the case for trial beyond the statutorily prescribed time period testified that she chose the earliest available date but did not ascertain whether that date was within the prescribed period. She stated that she relied upon the postponement clerk who normally checks to determine whether the trial date is within 180 days. The postponement clerk, however, testified that she did not follow her normal procedure of checking to determine whether the trial date was within the statutorily prescribed time period. Rather, she assumed that the supervisor who had selected the trial date "would have already screened it." The Assignment Commissioner acknowledged that there had been a "slip up" in his office's checking of the matter. He indicated that if the personnel in his office had been aware that the trial date had been set beyond the statutorily prescribed time period, an earlier trial date might have been secured. Nevertheless, he said that it was the ultimate responsibility of the State's Attorney's Office to monitor the trial dates and to notify the Assignment Office of a problem. For unexplained reasons, the State's Attorney's Office did not notify the Assignment Office of any problem. Manifestly, the failure of both the Assignment Office and the State's Attorney's Office to follow established procedures evidences a lack of ordinary care. Thus, this conduct constitutes negligence and is a breach of the State's duty to bring the defendants to trial.

The record in *Richardson* shows that before a trial set for 7 January 1982, the defendant, Mark Richardson, was in the custody of the State Division of Correction serving a sentence on an unrelated conviction. On the morning of trial, the Division of Correction failed to locate the defendant, then in its custody, and therefore failed to bring him to the

Circuit Court for Baltimore City for trial. The only expla-
nation offered was that there were three persons named
Mark Richardson in the Division's custody; that the Division
"can't tell which Mark Richardson is which"; and that
according to the State's Attorney, the Division of Correction
"inadvertently brought the wrong defendant."

The administrative judge directed that all three persons
named Mark Richardson be brought to the courthouse for a
"line up" at which time the defendant could be identified.
Additionally, the administrative judge found that the State's
failure to locate the defendant constituted good cause for
delay. The Assignment Office set a trial date beyond the
statutorily prescribed time period.

The record shows that there was no reason offered to
explain why the Division of Correction was unable to deter-
mine which of the three persons in its custody named Mark
Richardson was the defendant. Nor was there any reason
offered to explain why the Division failed to pursue the
obvious alternative, pursued by the administrative judge, of
bringing all three persons named Mark Richardson to the
courthouse on the morning of trial. Moreover, there was no
reason offered to explain why the case had been scheduled
for trial beyond the statutorily prescribed time period. In-
deed, there was no evidence to show that a date within the
statutorily prescribed time period was not available.

In my view, in the modern age of numbering systems,
data processing, computers, photographs, and fingerprints, it
is inexcusable neglect on the part of the Division of Correc-
tion not to know at all times the name, identity, and
whereabouts of a person entrusted to its custody. That
inexcusable neglect, coupled with the Division's failure to
pursue the alternative of bringing all three persons named
Mark Richardson to the courthouse on the day of trial,
exacerbated by the unexplained failure to schedule the trial
within the statutorily prescribed time period, constitutes
negligence and is a breach of the State's duty to bring a
defendant to trial.

The record shows that in *Weems and Patton* negligence and a breach of duty on the part of the Assignment Office was the cause of the postponement, and negligence and a breach of duty on the part of the Assignment Office and the State's Attorney's Office was the cause of the length of the delay. In *Richardson,* negligence and a breach of duty on the part of the Division of Correction was the cause of the postponement, and negligence and a breach of duty on the part of the Assignment Office was the cause of the length of the delay. Under these circumstances, the majority's application of the principle announced in these cases, in my view, establishes that negligence and a breach of duty on the part of the State, in and of itself, constitutes "good cause" for delay.

In my view, the concept that negligence and a breach of duty cannot constitute "good cause" is too elementary to require explication. *E.g., Sanders v. Heise,* 117 Ariz. 524, 526, 573 P.2d 924, 926 (Ariz.App.1978) (failure of prosecutor's office to be properly apprised of its trial schedule and availability of witnesses); *Johnson v. State,* 243 Ark. 812, 813, 422 S.W.2d 417, 418 (1968) (failure of prosecutor's office to secure presence of defendant incarcerated outside of state); *Batey v. Superior Court,* 71 Cal.App.3d 952, 957, 139 Cal.Rptr. 689, 693 (1977) (failure of prosecutor's office to replace unavailable prosecutor with available prosecutor); *Jaramillo v. District Court In & For the County of Rio Grande,* 174 Colo. 561, 569, 484 P.2d 1219, 1222 (1971) (failure of prosecuting attorney to proceed because of efforts to obtain defendant's testimony in other criminal cases); *State v. Glaindez,* 346 A.2d 156, 157 (Del.1975) (failure of prosecutor's office to be apprised of unavailability of witness); *State ex rel. Smith v. Rudd,* 347 So.2d 813, 815 (Fla.App. 1977) (failure of prosecuting attorney to provide correct scheduling information); *People v. McRoberts,* 48 Ill.App.3d 292, 295, 6 Ill.Dec. 274, 275–76, 362 N.E.2d 1096, 1097–98 (1977) (failure of prosecuting attorney to proceed because of mistaken belief that plea bargain was imminent); *People v. Powell,* 43 Ill.App.3d 934, 936, 2 Ill.Dec. 558, 560, 357 N.E.2d

725, 727 (1976) (failure of prosecutor's office to locate defendant incarcerated within state); *Holt v. State,* 262 Ind. 334, 336, 316 N.E.2d 362, 363 (1974) (failure of prosecuting attorney to explain or give reason for delay); *State v. Gorham,* 206 N.W.2d 908, 915 (Iowa 1973) (failure of prosecuting attorney to explain or give reason for delay); *State v. Cranmer,* 306 So.2d 698, 701 (La.1975) (failure of prosecuting attorney to explain or give reason for delay); *Commonwealth v. Alexander,* 371 Mass. 726, 731, 359 N.E.2d 306, 309 (1977) (failure of prosecuting attorney to explain or give reason for delay); *People v. Haynes,* 5 Mich.App. 641, 648, 147 N.W.2d 714, 718 (1967) (failure of Department of Corrections to inform prosecutor's office of defendant's ability to stand trial); *State v. Stevens,* 189 Neb. 487, 488, 203 N.W.2d 499, 500 (1973) (failure of prosecuting attorney to proceed because of mistaken belief that statutory prompt trial requirements applicable only to prosecutions on indictments and informations and not applicable to prosecutions on complaints); *People v. Fuggazzato,* 96 A.D.2d 538, 540, 464 N.Y.S.2d 847, 850 (2d Dept.1983) (failure of prosecutor's office to transmit required warrant); *Commonwealth v. Collins,* 266 Pa.Super. 340, 346, 404 A.2d 1320, 1323 (1979) (failure of prosecutor's office to locate defendant); *Commonwealth v. Woodson,* 248 Pa.Super. 545, 547, 375 A.2d 375, 376 (1977) (failure of prosecutor's office to secure presence of defendant incarcerated within county); *Commonwealth v. Cunningham,* 247 Pa.Super. 302, 308, 372 A.2d 473, 476 (1977) (failure of sheriff's office to advise prosecutor's office that defendant then incarcerated within state had been located); *Lyles v. State,* 653 S.W.2d 775, 779 (Tex.Cr.App.1983) (failure of prosecutor's office to secure presence of defendant because of mistake by sheriff's office in processing bail bond); *State v. Lindbo,* 94 Wash.2d 112, 115, 614 P.2d 1277, 1279 (1980) (failure of prosecuting attorney to explain or give reason for delay). In light of the statutory prompt trial requirement that mandates that all criminal cases be tried within 180 days, except for good cause, the fact that the

negligence in *Weems and Patton* and in *Richardson* may have been isolated instances is immaterial.

In my view, under the present circumstances, the negligence of the State did not constitute good cause for either the postponement or the length of the delay in *Weems and Patton* and in *Richardson.* Consequently, there was an abuse of discretion in these cases. Accordingly, I would affirm the trial courts' judgments granting the motions to dismiss.

## IV

### Conclusion

In my view, the majority establishes the following four principles today:

1) All criminal cases are to be tried within 180 days except for two percent of the cases.
2) "Chronic court congestion" is "nonchronic court congestion."
3) "Chronic court congestion" that causes delay is "good cause" for delay.
4) Negligence and a breach of duty on the part of the State is "good cause" for delay.

Even in the year 1984, I cannot in good conscience subscribe to such principles.